[Civ. No. 48931. First Dist., Div. One. May 4, 1982.]

CAMPBELL MUNICIPAL EMPLOYEES ASSOCIATION, Plaintiff and Appellant, v.
CITY OF CAMPBELL et al., Defendants and Respondents.

## COUNSEL

Robert E. Jesinger, Matthew D. Ross and Brundage, Davis, Frommer & Jesinger for Plaintiff and Appellant.

Richard S. Whitmore, M. Carol Stevens and Whitmore & Kay for Defendants and Respondents.

## OPINION

**GRODIN, J.***—This appeal stems from a proceeding in mandamus instituted by the Campbell Municipal Employees Association (CMEA) against the City of Campbell, the members of its city council, and various of its managerial employees. CMEA's complaint was, and is, that the city council violated both its own Employee Relations Ordinance and the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) by establishing for city employees represented by CMEA a date for retroactive payment of salary and medical insurance premium increases which was less favorable to those employees than city representatives had agreed to in negotiations, and less favorable than the city council adopted for employees represented by other organizations. After a hearing based on essentially stipulated facts, the trial court entered judgment denying the writ, and it is from that judgment that CMEA appeals.

### Factual and Procedural Background

In May 1978 CMEA entered into "meet and confer" sessions with representatives of the City of Campbell with the object of negotiating, on behalf of employees represented by CMEA, a memorandum of understanding establishing their wages and conditions of employment for the

*Assigned by the Chairperson of the Judicial Council.

period 1978-1980. After two sessions, the city proposed that further ne-gotiations be deferred until November, due to the uncertain fiscal situation created by the existence of Proposition 13 on the general election ballot. CMEA accepted that proposal, and agreed with the city that existing salaries and insurance coverage would continue in effect.

In November, the parties resumed negotiations, and by the end of January 1979, they had reached agreement on all but two issues. The two remaining issues were the amount of the city's 1978-1980 contributions toward health insurance premiums for city employees and the method of disposing of any savings realized by the city from the city's anticipated depooling of participation in the Public Employees' Retirement System. One issue which the parties later agreed was not in dispute was that the negotiated increases would be paid retroactive to October 1, 1978.

On January 31, 1979, the city's negotiating committee requested an "impasse meeting" pursuant to the impasse procedures established by the city's Employee Relations Ordinance.[1] Such a meeting was held on February 6, 1979, at which time the parties agreed that the only issues in dispute were the two issues identified above, but the parties were unable to resolve them. The parties then agreed to mediation under the auspices of the state Conciliation Service, in accordance with the impasse procedures outlined in the ordinance, but that, too, was unsuccessful. Finally, in accordance with those procedures, the matter was referred to the city council for its determination.

---

[1]Section 12 of the Employee Relations Ordinance provides: "If the meet and confer process has reached an impasse as defined in Section 2 of this Resolution, either party may initiate the Impasse Procedure by filing with the other party a written request for an impasse meeting, together with a statement of its position on all disputed issues. An impasse meeting shall then be scheduled by the Municipal Employee Relations Officer. The purpose of such an impasse meeting shall be 1) to review the position of the parties in a final effort to resolve such disputed issue or issues, 2) if the dispute is not resolved to discuss utilization of impasse procedures provided herein. [¶] In the absence of agreement between the parties on this point, the matter will be referred to the City Council. The Impasse Procedure is as follows: a. Mediation: By mutual agreement the impasse will be submitted to mediation. All mediation proceedings shall be private. The mediators shall make no public recommendations nor take any position concerning the issues. b. A determination by the City Council after a hearing on the merits of the dispute. c. Any other dispute resolving procedures to which the parties mutually agree or which the City Council may order. [¶] If the parties agreed to submit the impasse directly to the City Council or if the parties did not agree on mediation or having so agreed the impasse has not been resolved through such mediation, the City Council shall take such action regarding the impasse as it, in its discretion, deems appropriate. Any action taken by the City Council shall be final and binding."

On March 13, 1979, the city council conducted a hearing on the disputed issues, at which the city's negotiators and the CMEA presented arguments and facts in support of their respective positions. Thereafter, the city council adjourned to executive session, and met with the city's negotiators.

On March 22, 1979, the city council announced its decision. The decision adopted the position of the city negotiators as to the disputed issues, and the agreements which had been reached by the respective negotiators on all other issues, with one exception: instead of providing for increases in salary and medical insurance retroactive to October 1, 1978, as had been agreed, the city council decided that for employees represented by CMEA retroactivity would be provided only to February 1, 1979.

This decision on retroactivity was unique to employees represented by CMEA. All other employee groups received retroactivity to October 1, 1978. CMEA is the only employee organization which negotiated to impasse with the city and utilized the impasse procedures under the ordinance.

### *Discussion*

CMEA contends that the only issues subject to determination by the city council under the impasse procedures established by the Employee Relations Ordinance are those which remain in dispute after negotiations between representatives of the city and the employee organization involved, and that the council therefore acted contrary to the ordinance when, in the course of implementing those procedures, it reached back into the package of settled issues and modified it to the detriment of employees.

We are of the view that CMEA's interpretation of the ordinance is correct. Under the terms of the ordinance, a party seeking to initiate the impasse procedure does so by filing a request for an impasse meeting together with "a statement of its position on all disputed issues." The purpose of the impasse meeting is "to review the position of the parties in a final effort to resolve such disputed issue or issues," and to discuss utilization of impasse procedures "if the dispute is not resolved." If the matter is not otherwise resolved, then it is submitted to the city council for its "determination ... after a hearing on the merits of the dispute."

It seems plain from this language that the dispute which the council is to determine "after a hearing on the merits" is the dispute over issues not previously resolved. Indeed, the hearing which the council conducted in this matter was limited to the receipt of evidence and argument pertaining to those issues. Since it received neither evidence nor argument on the issue of retroactivity, it is difficult to understand how the council could determine that issue "on the merits" as the ordinance prescribes.[2]

If this were the only objectionable feature of the council's conduct in this case, it would be at least debatable whether CMEA would be entitled to the relief which it seeks, which is to require the city to pay employees within its bargaining unit retroactively to the date agreed upon in negotiations. This is so by reason of Government Code section 3505.1, which provides: "If agreement is reached by the representatives of the public agency and a recognized employee organization ... they shall jointly prepare a written memorandum of such understanding, *which shall not be binding*, and present it to the governing body or its statutory representative for determination." (Italics added.) This language, it has been held, "*reflect[s] the legislative decision that the ultimate determinations are to be made by the governing body itself* or its statutory representative and *not by others.*" (*Long Beach City Employees Assn., Inc.* v. *City of Long Beach* (1977) 73 Cal.App.3d 273, 278 [140 Cal.Rptr. 675]; (italics omitted.)

CMEA argues that the city, through its Employee Relations Ordinance, has "modified" section 3505.1, but it is not at all clear that the city has the power to do so. Thus, while the city may be said to have violated its statutory duty to meet and confer "in good faith" (Gov.

---

[2] The city objects to this interpretation on the ground that it conflicts with its notion of negotiations as a process in which all issues remain open until all issues are resolved. That is one possible mode of negotiations, but it is not the one contemplated by the city's impasse procedure. An impasse procedure limited to issues remaining in dispute is not at all unusual. (See *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 611, 613 [116 Cal.Rptr. 507, 526 P.2d 971].)

The city's objection highlights an anomalous feature of the impasse procedure established by the ordinance. Ordinarily, an impasse procedure entails participation, including possibly resolution of disputed issues, by a neutral party, such as a mediator or an arbitrator. A city council, in negotiations between the city and an employee organization, is hardly a neutral. As our opinion will suggest, it has ultimate responsibility for accepting or rejecting agreements reached in such negotiations. It is unrealistic to assume that it would not exercise some supervision of city representatives in the course of negotiations, by setting policy limits within which they make or accept offers. To that extent, it is a participant in the negotiating process. To characterize it also as a tribunal for the resolution of bargaining disputes is somewhat artificial, and creates certain inevitable tensions, as this case demonstrates.

Code, § 3505) by disregarding its commitment to accept agreements negotiated by its representatives, section 3505.1 poses an obstacle to the direct enforcement of that commitment through court order.

█ The facts of this case make it unnecessary to resolve that issue, for the city's failure to comply with its ordinance is not the only objectionable feature of its conduct. The date which the city council fixed for retroactivity in the case of employees represented by CMEA was at variance, not only with the date which had been agreed upon in earlier negotiations with CMEA, but also with the date fixed for retroactivity of increases for employees represented by all other organizations which negotiated with the city, which was the same, and under circumstances in which the only apparent, or asserted, explanation for the difference was that CMEA, unlike the other organizations, chose to utilize the impasse procedure which the city had adopted. By such conduct, the city discriminated against CMEA and its members in violation of Government Code section 3506. We reach that conclusion on the basis of the following analysis.

The Meyers-Milias-Brown Act, in Government Code section 3506, provides: "Public agencies ... shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under Section 3502." Section 3502 includes the right "to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations."

The "activities" of employee organizations, participation in which is protected against discrimination by section 3502, includes the process of meeting and conferring (i.e., negotiating) in an effort to reach agreement on matters within the scope of representation (Gov. Code, §§ 3503, 3505).[3] The city, through its Employee Relations Ordinance, has made the impasse procedure part of the meeting and conferring process.[4] Therefore, participation in the impasse procedure is among the activities protected by the statute.

---

[3]Section 3503 provides that recognized employee organizations shall have "the right to represent their members in their employment relations with public agencies." Section 3505 establishes the duty of public employers and employee organizations to "meet and confer in good faith" regarding "wages, hours, and other terms and conditions of employment."

[4]The impasse resolution procedures adopted by the city are authorized by section 3507, which permits local governments to adopt rules and regulations providing for "additional procedures for the resolution of disputes."

The language of sections 3502 and 3506 is patterned closely upon analogous provisions of the National Labor Relations Act (29 U.S.C. § 141 et seq.). The federal act similarly makes it an unfair labor practice to "interfere with, restrain, or coerce" employees in the exercise of their rights to "form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing" (29 U.S.C. §§ 158(a)(1), 157), and to discourage membership in any labor organization "by discrimination in regard to hire or tenure of employment or any term or condition of employment." (29 U.S.C. § 158(a)(3); see generally, Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 726-728.) It is therefore appropriate to look to federal law for guidance in interpreting the provisions of the state statute. (*Social Workers' Union, Local 535* v. *Alameda County Welfare Dept.* (1974) 11 Cal.3d 382, 391 [113 Cal.Rptr. 461, 521 P.2d 453]; *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608, 616.)

In *NLRB* v. *Great Dane Trailers* (1967) 388 U.S. 26 [18 L.Ed.2d 1027, 87 S.Ct. 1792], the United States Supreme Court held that an employer engaged in prohibited discrimination when it granted accrued vacation pay to nonstrikers, and to strikers who abandoned the strike and returned to work by a specified date, but refused to provide such pay to strikers who had not returned. The court of appeals had held there was no discrimination because there was no affirmative showing of unlawful motivation. Reversing, the Supreme Court provided the following analysis:

(1) The result of the company's refusal to pay vacation benefits to strikers "was discrimination in its simplest form" and discrimination likely to discourage union membership. "The act of paying accrued benefits to one group of employees while announcing the extinction of the same benefits for another group of employees who are distinguishable only by their participation in protected concerted activity surely may have a discouraging effect on either present or future concerted activity." (*Id.,* at p. 32 [18 L.Ed.2d at p. 1034].)

(2) If an employer's discriminatory conduct is "'inherently destructive' of important employee rights, no proof of antiunion motivation is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations." (*Id.,* at p. 34 [18 L.Ed.2d at p. 1035].)

(3) "[I]f the adverse effect of the discriminatory conduct on employee rights is 'comparatively slight,' an antiunion motivation must be proved to sustain the charge *if* the employer has come forward with evidence of legitimate and substantial business justifications for the conduct." (*Id.*, at p. 34 [18 L.Ed.2d at p. 1035].)

It was unnecessary to decide the degree to which the challenged conduct affected employee rights, since the company came forward with no evidence of legitimate motives for its discriminatory conduct. (*Id.*, at p. 34 [18 L.Ed.2d at p. 1035].)

The situation here is analogous. The city has in effect discriminated against employees represented by CMEA by withholding from them a degree of retroactivity in wage and fringe benefit increases which had been agreed upon in earlier negotiations, and which was granted to all other employees. The inference is strong that the motivation for that discrimination was to "punish" CMEA and its members for utilizing an impasse procedure which the city adopted as part of the meet and confer process and which, as we have noted, is on that account part and parcel of activities protected by the statute.

The city has advanced no other reason for the discrimination. Indeed, in its brief it suggests that the differential retroactivity period was adopted *precisely* to "reward" other employee organizations for having settled their disputes without utilizing the impasse procedure.

Whatever the merits of that asserted justification might be in other factual contexts, it cannot serve as "legitimate" justification for the city's conduct here; for in establishing the differential through modification of what CMEA reasonably thought *had* been settled in discussion with city representatives, the city violated its own ordinance, as we have held. We therefore conclude that it has discriminated against these employees in violation of section 3506. (See, to the same effect, *San Leandro Police Officers Assn.* v. *City of San Leandro* (1976) 55 Cal. App.3d 553 [127 Cal.Rptr. 856], holding that a city discriminated against managerial employees who opted to join the fire and police associations by withholding from them a "management incentive" plan which had been granted to all other managerial employees of the city.)

While it would be theoretically possible to remedy that discrimination by rescinding the additional retroactivity granted to other employees (cf. *San Leandro Police Officers Assn.* v. *City of San Leandro, supra,*

55 Cal.App.3d at p. 558), the passage of time has made that an obviously impractical, if not impermissible solution. ■ ■ ■ ■ We therefore conclude that CMEA is entitled to a writ of mandate[5] compelling respondents to make employees represented by CMEA whole for the loss in retroactivity of salary and insurance premium increases during the period October 1, 1978, to February 1, 1979. Upon remand the trial court will issue a writ of mandate to that effect.[6]

Reversed.

Racanelli, P. J., and Goff, J.,* concurred.

A petition for a rehearing was denied May 27, 1982.

---

[5]The parties in their briefs debate at considerable length whether a mandamus proceeding of this nature falls within the ambit of administrative mandamus (Code Civ. Proc., § 1094.5) or ordinary mandamus (Code Civ. Proc., § 1085). The city argues that because the ordinance requires the city council to hold a hearing at which evidence is required to be taken, and discretion in the determination of facts is vested in the city council, section 1094.5 applies. It overlooks the fact that no hearing was required by the ordinance, and none was held, on the issue of retroactivity, the only issue in dispute here. Moreover, "[t]he decisive question [in determining the applicability of § 1094.5] is whether the agency exercises an *adjudicatory* function in considering facts presented in an administrative hearing." (*Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 101 [280 P.2d 1]; see also, Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 214, p. 3970, and cases cited; italics added.) The city's own brief argues, "The fixing of salaries of city employees by a city council is a discretionary act ... because it is *legislative* in nature." (Italics added.) We agree that the city council was performing a legislative function, and that ordinary mandamus was the proper procedure.

[6]It is possible that employees suffered no loss from the delay in increases in insurance premiums. The trial court is in the best position to frame an appropriate order.

*Assigned by the Chairperson of the Judicial Council.