[No. F003381. Fifth Dist. May 1, 1985.]

PUBLIC EMPLOYEES ASSOCIATION OF TULARE COUNTY, INC.,
Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF TULARE COUNTY,
Defendant and Respondent.

COUNSEL

Barry J. Bennett and Thomas Sharpe for Plaintiff and Appellant.

Thomas D. Bowman, County Counsel, Lita O'Neill Blatner, Assistant County Counsel, and Kathleen Bales-Lange, Deputy County Counsel, for Defendant and Respondent.

OPINION

BROWN (G. A.), P. J.—This is an appeal from an order denying the petition of appellant, Public Employees Association of Tulare County (PEMA) for a writ of mandate seeking monetary payments from respondent County of Tulare (County). Appellant alleges violations of certain provisions of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.), requiring public entity employers to "meet and confer in good faith" with their employees regarding hours, wages and working conditions and prohibiting interference with appellant's right to invoke impasse.

### FACTS

Appellant PEMA is a labor organization which represents certain bargaining units of employees of respondent County. The bargaining members are composed of both members of PEMA and nonmember employees represented by PEMA.

Representatives of PEMA and County held numerous meet and confer sessions beginning in March 1982 to discuss the terms and conditions of employment for employees represented by PEMA during 1982. Throughout the meet and confer sessions, Bruce Dandy served as the chief negotiator for PEMA, and Jim Brinkerhoff served as chief spokesman for the County. In September 1982 the parties agreed to a salary increase in the form of a lump sum payment of $230, to be paid in December 1982. The money for the increase was to be taken from the moneys available for the calendar year 1983.

On November 1, 1982, the parties began negotiating on a memorandum of understanding (MOU) to cover the calendar year 1983. At the November 1, 1982, meet and confer session, the parties agreed to a set of meet and confer ground rules for the negotiating sessions. Ground rule No. 6 provided the procedure whereby the parties could reach "tentative agreement" as to an issue upon which the parties concurred, by reducing the issue to writing and initialing it.[1] At the request of Dandy ground rule 10 was revised to provide for a "cooling off period" which would immediately follow a declaration of impasse "without penalty to either party."[2]

---

[1] Meet and confer ground rule No. 6: "AGREEMENT—As issues are discussed and the parties concur on the intent and purpose of a specific issue or a package of issues, those issues shall be reduced to writing, and if then acceptable by both parties, initialed to indicate 'tentative agreement'. Said 'tentative agreement' shall be the positions and recommendations of the parties to their membership and Supervisors respectively. It is understood that a 'tentative agreement' does not commit either membership or Supervisors to that position or to a total agreement. '[T]entative agreement' shall conclude discussion on that issue or issues unless through mutual consent said issue is brought back for discussion. Total agreement will not be constituted until all issues of concern are resolved."

[2] Meet and confer ground rule No. 10: "IMPASSE RESOLUTION—PEMA and the County agree upon the declaration of impasse to a 10 day 'cooling off period' without penalty to either party. Upon conclusion of the 10 day period, the parties shall meet to see if impasse still exists. [¶] If no agreement is reached the parties shall be governed by the Employee Relations Policy Section #13."

In oral discussions it was understood that "without penalty" means that no proposals would be withdrawn or changed during the cooling off period.

Employee Relations Policy section 13 provides: "(a) If after a reasonable period of time, representatives of the County and the certified employee organization fail to reach agreement on wages, hours, and other terms and conditions of employment, the County and the certified employee organization may agree upon the appointment of a mediator mutually acceptable to both parties. The cost of mediation shall be divided equally between the County and the certified employee organization.

"(b) If mediation does not result in settlement of the impasse, the County's representatives and the certified employee organization representative shall each submit to the Board of Supervisors in writing their final proposal and recommendation, along with the reasons therefor, and such other data which would serve to clarify their position. The Board may approve either the County representative's or the employee organization representative's recommendation, or they may call for testimony, or they may ask for submission of further data, or they may seek the recommendations of an objective neutral party knowledgeable in matters of public employment relations. The Board's decision shall be final."

On November 8, 1982, PEMA submitted a proposal which included some 45 issues and 32 addenda. Included in the proposal was a request for a salary adjustment of 8 percent. On November 18, 1982, County presented its counterproposal which included an increase in salaries of an unstated amount, and proposed that the implementation of salary, and the entire agreement take place on January 9th; if an agreement was reached after January 9, then the agreement would be implemented at the beginning of the first full pay period thereafter. County's position was that the salary increase would not be retroactive past January 9, 1983. It was also stated that the subject of retroactivity would remain open for discussion.

During the November 22 meet and confer session the parties reached tentative agreement on 14 issues. After the November 22 session, no tentative agreements were "signed off" within the meaning of ground rule No. 6. There were, however, a number of issues as to which the parties exchanged identical language after that date.

On December 30, 1982, County presented its first salary proposal. This offer included a 1 percent salary increase on January 9, 1983, and 1 percent increase effective July 10, 1983.

On January 6, 1983, the County made a new salary proposal in the form of different percentage increases to be effective on various dates. During these negotiations, representatives of the parties spoke of a previously implemented $230 lump sum adjustment and its impact on the salary adjustment under consideration. The parties spoke in terms of pay periods.[3] On January 7, the parties discussed various salary proposals. The parties again spoke of a previous $230 lump sum salary adjustment, discussing its effect on the salary adjustment now under consideration. County proposed the January 9 deadline for retroactivity of salary be extended to January 12.[4]

During the meet and confer session held January 10, 1983, the parties discussed for the first time the lump sum salary adjustment rather than a straight-line percentage increase. PEMA proposed a lump sum increase of $336 calculated on 13 pay periods. Brinkerhoff estimated the County might be able to offer a lump sum closer to $300.

---

[3]Brinkerhoff explained that the $230 lump sum payment previously received by PEMA units had to be considered 2 percent of a 5 percent increase, leaving 3 percent remaining for the fiscal year.

[4]On November 18, 1981, representative Brinkerhoff stated, "We would like to reach an agreement by January 9, 1983 but if we don't the salary is not subject to retroactivity." Hence, whenever the January 9 deadline was discussed, retroactivity was impliedly an issue. Contrary to the parties' briefs, the notes of the meeting indicate the parties did not discuss a lump sum salary adjustment on this date.

On January 11, 1983, County presented a salary proposal of a $295 lump sum to be made on April 1, 1983, and a five-range increase to be effective July 10, 1983. Representatives of County and PEMA discussed how the lump sum figure had been determined. Brinkerhoff spoke in terms of total dollars available for the period from January 9, 1983, to July 10, 1983, divided by the number of employees represented by PEMA. PEMA was willing to settle for the $295 lump sum but was not in agreement as to the April 1, 1983, payment date and was unwilling to settle on salary without the County's agreement on PEMA's mileage and agency shop proposals. Dandy announced that PEMA was giving its "Last, Best and Final offer." This offer included a salary proposal of a $295 lump sum payment to be made February 1, 1983, and a five-range increase effective July 10, 1983.[5] The parties then agreed to invoke the 10-day "cooling off period" provided for in ground rule 10. They also agreed the next session would be January 21, 1983.

On January 12, 1983, Brinkerhoff sent a letter to PEMA indicating that the settlement deadline was extended to January 22, 1983. This deadline refers to the County's position that salary increases would not be retroactive past January 9, 1983, even if negotiations continued past January 9, 1983. The letter extended the deadline so that settlement prior to January 22, 1983, would be implemented effective January 9, 1983. If the parties were to go beyond January 22 without settlement, the County's position on implementation would revert to its prior language, i.e., "implementation will be effective on the first pay period after this agreement is ratified and adopted."[6]

On January 21, 1983, the parties met again to discuss whether they were still at impasse. Brinkerhoff announced that the County would like to reach

---

[5]After PEMA's representative made PEMA's final offer, the following exchange took place between County representative Brinkerhoff and PEMA representative Dandy:

"JB: Am I correct that we are still apart in three areas, Mileage, Fair Share Fee and the implementation date of the one time adjustment?

"BD: Right.

"JB: You have no room for movement?

"BD: Right.

"JB: This is your Last, Best and Final Offer?

"BD: Correct.

"JB: If the County changed the salary adjustment date you would not consider dropping Mileage and Fair Share Fee.

"BD: Correct."

[6]Brinkerhoff's letter stated, in part: "In view of the no penalty clause contained in cooling off period language of the current Ground Rules the County is further extending the settlement deadline to Midnight, Saturday, January 22, 1983. Settlement prior to that point will be implemented effective January 9, 1983. If we go beyond that point without settlement the County's position on implementation reverts to our prior language, i.e. implementation will be effective on the first pay period after this agreement is ratified and adopted."

agreement within the time frame established by the County and that if PEMA did not accept County's position and reach agreement by midnight, January 22, 1983, the $295 lump sum payment would be reduced by two-thirteenths to $250. After further negotiation, it was agreed the parties remained at impasse, and the parties agreed to present their positions to the board of supervisors.[7] As of that date, the County's final offer to PEMA was a $295 lump sum salary adjustment to be paid in April of 1983 and a 5 percent salary increase to be effective July 10, 1983. PEMA's last offer was a $295 lump sum salary adjustment to be paid in February of 1983 and a 5 percent increase effective July 10, 1983.

On January 25, 1983, the board of supervisors met to resolve the impasse. Both parties presented written and oral statements. As part of Brinkerhoff's oral presentation on retroactivity, Brinkerhoff urged the board to reduce the lump sum salary adjustment to $250. The board then enacted resolution No. 83-115. This resolution purported to adopt County's last offer. The County's last offer provided: "Employees covered by this MOU will receive general salary adjustments as follows:

"Employees on the payroll on April 1, 1983 will receive a one time only salary adjustment of $295 to be paid with a separate check on the payday of April 12, 1983 except that employees on unpaid leave will not receive this adjustment until they return to work and complete a minimum of one pay period in this fiscal year. Employees working less than full time will receive a pro rata increase.

"The July 10, 1983 salaries for petitions covered by this MOU will be increased by 5 ranges." By the same resolution the board reduced the "one time salary lump sum to be paid on April 12, 1983" to $250.

PEMA filed a petition for a writ of mandate directing the County and the board of supervisors to reinstate to the employees represented by PEMA a one-time salary adjustment in the amount of $295.

---

[7]At the January 21 meet and confer session, Brinkerhoff distributed a handout which read as follows: "Is your membership aware that the County has consistently maintained the position that there will be no retroactivity for settlements after January 9, 1983.
  "The deadline on the County's position has been moved to midnight Saturday, January 22, 1983 because of our two extensions:
  "1) On Friday, January 7, 1983 we extended to Wednesday, January 12, 1983 because of the progress at that time.
  "2) On Wednesday, January 12, 1983 we extended to Saturday, January 22, 1983 because of the Cooling Off period.
  "In accord with this position our offer of Salary and Term reverts to the prior language at Midnight on Saturday. The net impact is to reduce the lump sum amount by two (2) pay periods or ⅔ths.
  "The County requests that PEMA caucus and reconsider its position."

A hearing was held. At the close of the hearing the judge requested a posttrial brief on the issue of whether agreement on "issues and package proposals could in effect be deemed to be a tentative agreement, in spite of ground rules calling for initialing of tentative agreements." The judge denied PEMA's petition, ruling: "Petitioner's request for a Writ of Mandate is denied. Respondent shall have costs of suit.

"The evidence is insufficient to prove that respondent reached a tentative agreement, reduced to writing, in the amount of the fixed sum salary increase. The issues of the fixed sum payment, the date of the payment, fair share fee and mileage proposals were linked and unresolved.

"Petitioner has failed to prove that failure to pay the salary increase of $295.00 was to penalize petitioner."

PEMA seeks reversal of the trial court's ruling.

### DISCUSSION

I. *Substantial Evidence Supports County's Position That No Proposal Was Withdrawn After Impasse.*

■ An appellate court must uphold the judgment of the trial court when substantial evidence supports the judgment. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Kennedy* v. *South Coast Regional Com.* (1977) 68 Cal.App.3d 660, 666 [137 Cal.Rptr. 396].)

■ County contends it did not change the salary proposal after impasse was declared. Rather, in accordance with its position on retroactivity throughout the negotiations, County reduced the salary adjustment offer by two-thirteenths—two pay periods—when the offer on retroactivity (that the salary adjustment would be retroactive as of Jan. 9) expired on January 22, 1983.

County's position on retroactivity can be summarized as follows: if a salary adjustment agreement was not reached on January 9, the first pay period of the 1983 fiscal year, a salary adjustment would be payable as of the first pay period after an agreement was reached. County twice extended the January 9 deadline so that if an agreement was reached by January 22, 1983, the salary adjustment would be retroactive to January 9. The board of supervisors approved the County's recommendation on January 25. The first pay period following January 25 was two pay periods beyond the January 9 deadline. Therefore, two pay periods, or two-thirteenths, were deducted from the lump sum salary adjustment offer of $295.

There is substantial evidence to support the County's position. First, it is apparent that the salary adjustment under contemplation was tied to a previous $230 lump sum adjustment and that the impact of the $230 lump sum adjustment was calculated in terms of pay periods. On January 10, 1983, Dandy made an offer of a lump sum payment calculated in terms of pay periods. The County extended the settlement deadline from January 9 to January 12 and eventually to January 22, after the consideration of a lump sum salary adjustment, so as to give PEMA the benefit of retroactivity if agreement was reached before January 22. Finally, at the meeting of January 21, Brinkerhoff explained the impact of the County's position on retroactivity and even distributed a handout explaining the County's position. Hence, County did not withdraw its lump sum offer; its position on retroactivity merely expired.

II. *The County Did Not Violate Its Duty to Meet and Confer in Good Faith When It Reduced the Lump Sum Salary Adjustment to $250.*

■ PEMA argues the County violated its duty to meet and confer in good faith when it reduced the amount of the lump sum proposal after impasse was declared. PEMA claims County disregarded the impasse resolution process.

Government Code section 3505 provides in part: "The governing body of a public agency . . . or other representatives as may be properly designated . . . shall meet and confer in good faith. . . .

" 'Meet and confer in good faith' means that a public agency, or such representatives as it may designate, and representatives of recognized employee organizations, shall have the mutual obligation personally to meet and confer . . . . The process should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent."

PEMA's argument is in error. Ground rule 10 provides that during the 10-day cooling off period proposals may not be withdrawn or changed. It does not prohibit changing proposals once the cooling off period has expired. Undisputed facts are that County did not change its proposal during the cooling off period, but reduced the $295 lump sum figure after the cooling off period expired. This was not proscribed by rule 10.

■ Moreover, the mere fact that County adamantly insisted on its bargaining position on retroactivity does not suffice to render it guilty of refusal to bargain. (*Wal-Lite Division of United States Gypsum Co.* v. *N. L. R. B.*

(8th Cir. 1973) 484 F.2d 108, 111.) The law merely requires the parties to maintain a sincere interest in reaching an agreement. PEMA presents no evidence mandating an alternative conclusion in the present case.

*Campbell Municipal Employees Assn.* v. *City of Campbell* (1982) 131 Cal.App.3d 416 [182 Cal.Rptr. 461], relied on by PEMA, is not antithetical. In *Campbell* the city council acted contrary to established and past procedures when, in the course of implementing those procedures, it reached back into the package of settled issues and modified an issue to the detriment of the employees. The Court of Appeal held that under an impasse procedure established by a local employee relations ordinance, the only issues subject to determination by the city council are those which remain in dispute after negotiations between the parties. (*Id.,* at p. 420.) In the present case, there is substantial evidence to support the trial court's finding that the sum and the date of the lump sum payment were unresolved issues. The parties had not reached tentative agreement on these issues in accordance with ground rule 6. The County even indicated a willingness to change its last offer of $295 if PEMA was willing to negotiate. Hence, the holding in *Campbell* is inapplicable to the facts in the present case.

Moreover, on January 21, 1983, when the parties met for the last time before submitting their proposals to the board of supervisors, County made it clear to PEMA that failure to reach a settlement by January 22 would result in a reduction of the County's $295 lump sum offer by two-thirteenths to $250. County had the right to remain firm on this issue and did not violate its duty to meet and confer in good faith by doing so.

III. *County Did Not Unlawfully Interfere With PEMA's Right to Engage in Collective Bargaining.*

PEMA also claims that the reduction in the salary proposal is unlawful in that it constituted impermissible interference with protected activity. More specifically, appellant contends that by reducing the lump sum from $295 to $250 after impasse was declared, County impermissibly interfered with PEMA's right to engage in collective bargaining (invoke impasse) in violation of Government Code section 3506.[8]

The Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) parallels the National Labor Relations Act (29 U.S.C. § 151 et seq. (NLRA)) and

---

[8]Government Code section 3506 provides in part: "Public agencies . . . shall not interfere with, intimidate, restrain, coerce or discriminate against employees because of their exercise of their rights under Section 3502."

Government Code section 3502 provides in part: ". . . [P]ublic employees shall have the right to form, join, and participate in the activities of employee organizations . . . ."

California courts should look to federal case law in interpreting the act. (*Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 815 [165 Cal.Rptr. 908].) Government Code section 3506 is patterned closely after section 8 (a)(1) of the NLRA (29 U.S.C. § 158 (a)(1)) which provides it is an unfair labor practice for an employer to "interfere with, restrain, or coerce" employees in the exercise of rights to "bargain collectively." (29 U.S.C. §§ 158 (a)(1), 157; *Campbell Municipal Employees Assn.* v. *City of Campbell, supra,* 131 Cal.App.3d at p. 423.)[9]

▮ PEMA correctly maintains that it need not prove County intended to interfere with PEMA's right to bargain collectively or that County was motivated by antiunion animus. (*Fun Striders, Inc.* v. *N. L. R. B.* (9th Cir. 1981) 686 F.2d 659, 663; *Carian* v. *Agricultural Labor Relations Bd.* (1984) 36 Cal.3d 654, 671 [205 Cal.Rptr. 657, 685 P.2d 701].) All PEMA must prove to establish an interference violation of section 3506 is: (1) That employees were engaged in protected activity; (2) that the employer engaged in conduct which tends to interfere with, restrain or coerce employees in the exercise of those activities, and (3) that employer's conduct was not justified by legitimate business reasons. (*Fun Striders, Inc.* v. *N. L. R. B., supra,* 686 F.2d at pp. 661-662; Gorman, Basic Text on Labor Law (1976) § 12, pp. 132-133.)

The County does not dispute that invoking impasse is a protected activity (*Campbell Municipal Employees Assn.* v. *City of Campbell, supra,* 131 Cal.App.3d at p. 422). We are of the opinion, however, that the County's conduct in reducing the lump sum by two-thirteenths, from $295 to $250, after the parties remained at impasse does not qualify as "conduct which tends to interfere with, restrain or coerce" PEMA in its right to declare impasse. And PEMA cites no cases in which such a relatively minor employer action rises to a Government Code section 3506 or NLRA section 8(a)(1) violation.

The judgment is affirmed. Costs to the County.

Hamlin, J., and Vander Wall, J.,* concurred.

---

[9]NLRA section 8(a)(1) does not mention intimidation or discrimination (a section 8(a)(3) violation) and these elements are not relevant to this case.

*Assigned by the Chairperson of the Judicial Council.