[No. B040811. Second Dist., Div. Seven. Nov. 27, 1990.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 434, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

---

**COUNSEL**

Davis, Cowell & Bowe, Richard G. McCracken and Andrew J. Kahn for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Lester J. Tolnai, Deputy County Counsel, for Defendants and Respondents.

---

**OPINION**

**LILLIE, P. J.**—Plaintiff, Service Employees International Union, Local 434, appeals from judgment denying plaintiff's petition for a writ of mandate which would have ordered defendant County of Los Angeles to meet and confer with plaintiff as the representative of a group of workers alleged to be employees of the county.

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleged: Plaintiff is in the process of organizing home care workers who provide services to public aid recipients under the In-Home Supportive Services (IHSS) program (Welf. & Inst. Code, § 12300 et seq.). Over 12,000 home care workers, who have no recognized union representation, have authorized plaintiff to represent them in negotiations with the county. Plaintiff contends the home care workers are employees of the county for purposes of the Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.), which obligates local government employers to bargain with the representatives of their employees about wages, hours, and other terms and conditions of employment. The county denies that the home care workers are its employees. The complaint sought a determination that the home care workers are employees of the county for purposes of the MMBA and a peremptory writ of mandate ordering the county to meet and confer with plaintiff as the authorized representative of the home care workers.

The following statement of facts is based on the trial court's statement of decision.

The purpose of the IHSS program is to reduce the cost of care for the aged, blind or disabled by providing care for them in their homes. The program was originated, and is largely funded, by the federal government. A state may participate in the program by paying a portion of the funding and complying with federal requirements. California participates in the IHSS program pursuant to Welfare and Institutions Code section 12300 et seq. The county administers the program locally on behalf of the state in accordance with the statute and state regulations establishing a uniform range of services available to all eligible recipients.[1] (Welf. & Inst. Code, §§ 12301, 12301.1, 12302.) County social workers interview applicants for IHSS services and determine their eligibility and need for such services[2] and the number of hours of service to which the applicant is entitled under the regulations. (Reg. 30-761.) The county forwards the recipient's application to the state. If the state determines the applicant is eligible for the services the state sends a notice of action to the recipient setting forth a description of each specific service authorized and the number of hours allotted to each. (Welf. & Inst. Code, § 12300.2.)

A county may deliver services under the IHSS program by (1) hiring in-home supportive personnel in accordance with established county civil services requirements, (2) contracting with a city, county, city or county agency, a local health district, a voluntary nonprofit agency, a proprietary agency or an individual, or (3) making direct payment to a recipient for the purchase of services. (Welf. & Inst. Code, § 12302.) Defendant county chose the third alternative. Under that procedure the county may not compel the recipient to employ a specific individual (provider) to provide the authorized services. (Reg. 30-767.2.)

Where a recipient is unable to obtain a provider the county is required to make a reasonable effort to help the recipient find one. (Reg. 30-767.132.) To this end the county has set up a registry wherein prospective providers may list their names. Any person may become a provider. There are

---

[1] The regulations are not published in the California Code of Regulations (formerly the Administrative Code).

[2] Available services include: domestic services (e.g., sweeping, changing bed linen); heavy cleaning to remove hazardous debris or dirt; preparation of meals, meal cleanup and planning of menus; laundry services; food shopping and other shopping or errands; nonmedical personal services; transportation to and from appointments with physicians, dentists and other health practitioners, or transportation necessary for fitting health related appliances, devices and special clothing; yard hazard abatement. (Welf. & Inst. Code, § 12300; reg. 30-757.)

currently 50,000 providers in the county and there is no limit to the number of persons who may become providers in the IHSS program. The county does not screen or qualify prospective providers. If a recipient needs assistance in locating a provider the county social worker gives the recipient the names of three prospective providers from the registry. The recipient then contacts and interviews those persons and determines whether one of them is suitable and will be employed. On the other side of the coin, a provider is free to select a recipient for whom he or she is willing to work.

To obtain payment for the provider's services the recipient and the provider must sign and certify a time sheet showing the number of hours of provider assistance rendered during the preceding month. The recipient mails the time sheet to the county where it is checked for completeness and then entered into a computer payroll system installed and operated under contract with the state. Payment for the provider's services is made by the state and mailed to the recipient or the provider.

The trial court found: The county exercises no supervisory control over providers. The manner in which the provider's tasks are performed is determined by the recipient, as are the hours when such services are performed. The provider is free to terminate his or her services without notice to the county; likewise, a recipient may discharge a provider at any time without notice to the county. If a provider is not performing satisfactorily the county has no right to intervene. Where the recipient's health or safety is endangered by such unsatisfactory performance, the county's only recourse is to place the recipient in an appropriate facility. The county has no authority to adjudicate a dispute between recipient and client regarding services. For purposes of the method of delivering IHSS services chosen by the county, employer is defined as the recipient and employee is defined as the provider. (Reg. 30-753, subds. (i), (j).) As the employer, a recipient has responsibilities for work scheduling and working conditions. (Reg. 30-764.31.) Over 50 percent of recipients have friends or family members serving as providers. The decision regarding which provider to employ is solely that of the recipient. The county social worker makes no recommendation as to any particular provider even where the county, in carrying out its duty to assist the recipient, gives the recipient the names of three prospective providers from the registry.

The county has no authority to screen providers, control who will be a provider, control the number of providers (which is unlimited), or regulate their hours of work, vacations, hiring or termination. While the county is required to fix the providers' compensation at not less than the minimum wage, the compensation is paid from the state treasury, with the state

assuming responsibility for various deductions for insurance and other benefits. Further, there is no credible evidence that the county ever considered itself an employer of the providers. On the contrary, its actions are consistent with its position that the providers are not employees of the county under the MMBA or in any other context.

Judgment was entered denying plaintiff's petition for writ of mandate and declaring that IHSS providers under the independent provider mode of delivery of service are not employees of the county within the meaning of the MMBA.

Plaintiff appeals from the judgment.

## DISCUSSION

### I

While plaintiff does not expressly so argue, it implies that the trial court—and inferentially this court as well—was bound by decisions of the federal Circuit Court of Appeals and the California Court of Appeal, cited below, which determined that home care providers in California's IHSS program are employees of the state or the state and county.

In *Bonnette* v. *California Health and Welfare Agency* (9th Cir. 1983) 704 F.2d 1465, it was held that under the Fair Labor Standards Act (FLSA) (29 U.S.C. § 201 et seq.) welfare agencies of the State of California and three of its counties were employers of in-home care providers whose services, as in the present case, were purchased by recipients of the services with money provided by the state; accordingly, the providers were entitled to the federal minimum wage. After noting that the definition of "employer" in the FLSA must be given an expansive interpretation in order to effectuate the statute's broad remedial purposes, including payment of the federal minimum wage (*Bonnette, supra*, 704 F.2d at p. 1469), the court stated: "We conclude that, under the FLSA's liberal definition of 'employer,' the appellants were employers of the chore workers. The appellants exercised considerable control over the nature and structure of the employment relationship. They also had complete economic control over the relationship. The 'economic reality' was that the appellants employed the chore workers to perform social services for the benefit of the recipients. The fact that the appellants delegated to the recipients various responsibilities does not alter this; it merely makes them joint employers." (*Id.*, at p. 1470.)

The other case upon which plaintiffs rely is *In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720 [199 Cal.Rptr.

697], a decision of the Third District, wherein it was held that for purposes of the workers' compensation law (Lab. Code, § 3200 et seq.) an IHSS provider is employed by the state as well as the recipient and therefore is eligible for benefits for an injury sustained in the course and scope of employment. Said the court: "This scheme of engagement of individuals by the state, through its agents, to perform IHSS services for recipients required by state regulations establishes an employment relationship. The individual must do the chores listed in the county assessment of need. Payment for these services is provided by the state. The county, under the regulatory scheme, has the right to sufficient control over the IHSS provider to make the state chargeable, by virtue of the agency relationship with the state, as *an* employer." (*In-Home Supportive Services, supra,* 152 Cal.App.3d at p. 731, original italics, fn. omitted.)

The foregoing cases are of doubtful application in the present action, inasmuch as they determined that an IHSS provider is an employee of the state, or the county and the state, for purposes other than the MMBA. ■ In any event California courts are not bound by the decisions of lower federal courts even on federal questions. (*People* v. *Neer* (1986) 177 Cal.App.3d 991, 1000 [223 Cal.Rptr. 555].) The trial court refused to follow the *Bonnette* case because its conclusion was based on a broad interpretation of the term "employee" for purposes of the FSLA. As to the *In-Home Supportive Services* case, the court correctly noted that it was not in point since it held that for purposes of workers' compensation coverage IHSS providers are employees of the state. ■ While *In-Home* indicated that the county, as agent of the state, has the right to exercise control over IHSS providers, we are not bound by that decision (see *Nissan Motor Corp.* v. *Superior Court* (1989) 212 Cal.App.3d 980, 982 [261 Cal.Rptr. 80]) and decline to follow it, inasmuch as the trial court's contrary finding is supported by the record.

Plaintiff also brought to the trial court's attention an opinion of the California Attorney General which concluded that for purposes of collective bargaining IHSS providers may be considered county employees. (68 Ops.Cal.Atty.Gen. 194, 199-200 (1985).) "The counties control the rate and method of payment, determine the amount and nature of the services required by the recipient, and are significantly involved in supervising the worker's job performance." (*Id.,* at p. 199.) ■ The opinions of the California Attorney General are advisory only and do not carry the weight of law. (*People* v. *Vallerga* (1977) 67 Cal.App.3d 847, 870 [136 Cal.Rptr. 429].) The trial court disagreed with the Attorney General's opinion cited above and determined that the county exercised no control over providers either directly or indirectly.

## II

The MMBA defines "public employee" as "any person employed by any public agency." (Gov. Code, § 3501, subd. (d).) This definition is not helpful in determining whether IHSS providers are employees of the county. Accordingly, we must look elsewhere for guidance.

■ "An employee is an individual who performs services subject to the right of the employer to control both what shall be done and how it shall be done and an employer is a person for whom an individual performs services as an employee." (*Weisman* v. *Blue Shield of California* (1984) 163 Cal.App.3d 61, 68 [209 Cal.Rptr. 169].) "The essential characteristic of employment relationship is the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed." (*Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718, 721 [235 P.2d 16].) In *Service Employees Internat. Union* v. *Superior Court* (1982) 137 Cal.App.3d 320 [187 Cal.Rptr. 9], the court listed four additional factors pertinent in determining the existence of an employer-employee relationship for purposes of the MMBA: (1) The power to discharge the person claimed to be an employee; (2) the payment of salary; (3) the nature of the services; and (4) the parties' belief as to the existence of an employment relationship. (*Id.*, at pp. 325-326.)

A trial was had at which evidence was presented by both parties on the employment issue. In its statement of decision the trial court found that each of the elements listed above pointed to the lack of an employer-employee relationship between defendant county and the IHSS providers. Plaintiff attacks the finding that the county exercises no control over the manner in which the providers perform their duties.

■ The reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) Where an appellant challenges the sufficiency of the evidence, his burden is a heavy one; he must show that there is no substantial evidence whatsoever to support the findings of the trier of fact. (*Kimble* v. *Board of Education* (1987) 192 Cal.App.3d 1423, 1427 [238 Cal.Rptr. 160].) Plaintiff fails to carry that burden. It asks in essence that we reweigh the evidence and choose the inferences to be drawn therefrom. This we cannot do. (*Estate of Gerber* (1977) 73 Cal.App.3d 96, 112-113 [140 Cal.Rptr. 577]; *Roland* v. *Hubenka* (1970) 12 Cal.App.3d 215, 220 [90 Cal.Rptr. 490].) "The trier of fact is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn

therefrom; is the sole judge of the credibility of the witnesses; may disbelieve them even though they are uncontradicted if there is any rational ground for doing so . . . ; and, in the exercise of a sound legal discretion, may draw or refuse to draw inferences reasonably deducible from the evidence." (*Horn* v. *Oh* (1983) 147 Cal.App.3d 1094, 1099 [195 Cal.Rptr. 720].)

According to the dissenting opinion, whether IHSS providers are county employees should be determined within the meaning of the MMBA. The dissent faults us for not giving due consideration to the purpose of the MMBA and for refusing to follow *Bonnette* v. *California Health & Welfare Agency, supra,* 704 F.2d 1465, which broadly interpreted the term "employer" in the Fair Labor Standards Act to apply to a county's relationship with IHSS providers. These criticisms are not well taken.

█ Regardless of the purpose of the MMBA—in brief, "to promote full communication between public employers and their employees" (Gov. Code, § 3500)—the statute does not apply where there is no employment relationship. As we pointed out, the MMBA definition of employee—"any person employed by any public agency" (Gov. Code, § 3501)—is of no help in determining the existence of an employment relationship. The dissent attacks our reliance on common law definitions of that relationship. In so doing it ignores *Service Employees Internat. Union* v. *Superior Court, supra,* 137 Cal.App.3d 320, wherein the following factors are listed as pertinent in determining the existence of an employer-employee relationship for purposes of the MMBA: right to control and direct the activities of the person rendering service; power to discharge that person; payment of salary; nature of services; and parties' belief as to the employment relationship. (*Id.*, at pp. 325-326.) Further, contrary to the position taken by the dissent the applicability of the MMBA cannot be ascertained in a vacuum. The regulations must be consulted to determine whether the IHSS providers are employees of defendant county. For purposes of the method of delivering IHSS services chosen by the county, the regulations define employer as the recipient and employee as the provider. (Reg. 30-753, subds. (i), (j).)[3]

---

[3] The dissent ignores this regulation and instead concludes that the IHSS providers are employees of the county based on a detailed analysis of the regulations purporting to show that the county has the right to control the activities of the providers as well as their wages, hours and other conditions of employment. The dissent's analysis is untenable in light of Welfare and Institutions Code section 12302 which provides that one of the three methods by which a county may deliver services under the IHSS program is hiring in-home supportive personnel in accordance with established county civil services requirements. Under this alternative the in-home personnel are employees of the county. The other methods of delivering IHSS services are contracting with specified public entities or agencies, or individuals, and making direct payments to the recipient for the purchase of services. (Welf. & Inst. Code, § 12302.) Thus, only one category specified by the Legislature involves hiring by the county and the consequent creation of an employer-employee relationship between the county and the

In the *Bonnette* case, the court determined that the State of California and three of its counties were employers of IHSS care providers because those entities "exercised considerable control over the nature and structure of the employment relationship." (704 F.2d at p. 1470.) In the present case the trial court, on conflicting evidence, found that defendant county exercises no such control. Accordingly, the *Bonnette* case is not persuasive authority for interpreting the term "employee" in the MMBA to include IHSS providers.

### III

Taking a different tack, plaintiff argues that the regulations govern the relationship between the county and the IHSS providers. Accordingly, the evidence presented at trial was irrelevant and we are not required to defer to the findings of the trial court. We do not agree.

Plaintiff argued below, as it does here, that the regulations are determinative of the question whether the IHSS providers are employees of the county and it is therefore unnecessary to take evidence. The court rejected that approach stating: "Regulations are relevant, but in the end the court must take evidence on what the workers in this county, today, are doing, how they are being supervised, if at all; what is their [*sic*] relation between the county officials and the workers and providers and so forth." Plaintiff indicated that it was prepared to proceed to trial and trial was had at which evidence of the type mentioned by the court was presented. Accordingly, the status of the IHSS providers as employees of the county was a question of fact, not a question of law. ■ "[T]he question whether one is an independent contractor, agent or employee is largely one of fact depending on all the circumstances of the relations of the parties." (*Housewright* v. *Pacific Far East Line, Inc.* (1964) 229 Cal.App.2d 259, 265 [40 Cal.Rptr. 208].)

■ The dissent asserts that the interpretation and application of the MMBA and the IHSS regulations is a question of law. Where there is no factual dispute, the interpretation and applicability of a statute to a given set of facts is a question of law. (*Lewis* v. *City of Los Angeles* (1982) 137

---

person hired. The other two categories, both expressly and by implication, provide alternatives which do not create such a relationship between the county and the person or entity furnishing the IHSS services. Accordingly, the dissent's attempt to classify the IHSS providers as employees of the county is contrary to the intent of the Legislature as evidenced by Welfare and Institutions Code section 12302 and cannot be justified by the MMBA for, regardless of its purposes, the MMBA does not apply, absent an employment relationship between the public entity and the person seeking to invoke its provisions.

Cal.App.3d 518, 521 [187 Cal.Rptr. 273]; *Mount Vernon Memorial Park* v. *Board of Funeral Directors & Embalmers* (1978) 79 Cal.App.3d 874, 884 [145 Cal.Rptr. 275].) The evidence was conflicting as to whether an employer-employee relationship exists between defendant county and the IHSS providers as measured by the terms of the regulations. The trial court resolved the conflicts by making findings determinative of the issue. For example, the court found that defendant does not recommend a particular provider to a particular recipient and exercises no supervisory control over providers, the manner and performance of their tasks being determined by the recipient and the provider. Where, as here, the facts have been resolved, the construction of a statute and its application to a given situation are matters of law to be determined by the court. (*Aguirre* v. *Southern Pac. Co.* (1965) 232 Cal.App.2d 636, 642-643 [43 Cal.Rptr. 73].) "The interpretation and applicability of a statute is clearly a question of law for determination by the trial court in the initial instance." (*Beck* v. *Piatt* (1972) 24 Cal.App.3d 611, 615 [101 Cal.Rptr. 236].) We may give deferential consideration to the trial court's interpretation but we are not bound thereby. (*Generes* v. *Justice Court* (1980) 106 Cal.App.3d 678, 681 [165 Cal.Rptr. 222].)

The dissent charges that we improperly rely on the substantial evidence rule of review, thereby renouncing our duty of independent review of the trial court's construction of the statute and regulations. The charge is unfounded. As noted above, the trial court's findings are based on conflicting evidence. We employ the substantial evidence rule to uphold those findings, which are the starting point of our interpretation of the statute and the regulations.

## IV

 Plaintiff insists that the state and the county are joint employers of the IHSS providers, and the county's role as a joint employer is sufficient to render the providers employees of the county for purposes of the MMBA.[4]

The trial court found that the county acts as the agent of the state in administering the IHSS program and concluded that in some circumstances an agent may be a joint employer, a dual employer or a special employer. (See *County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d

---

[4] Interestingly, in the Attorney General's opinion upon which plaintiff relied below it is stated: "While the concept that IHSS workers may have more than one 'employer' appears appropriate for purposes of some laws, it would seem inappropriate and unworkable for purposes of collective bargaining under California statutes." (68 Ops.Cal.Atty.Gen. 194, 199, *supra*.)

391, 405 [179 Cal.Rptr. 214, 637 P.2d 681].) However, such a relationship arises only where both the general employer and the special employer have the right to control the employee's activities. (*Ibid.*) The court found the county had no such right of control and therefore was not an employer of the IHSS providers under a dual or special employer theory. Whether the right to control existed and was exercised is generally a question of fact to be resolved from the reasonable inferences drawn from the circumstances shown. (*Kowalski* v. *Shell Oil Co.* (1979) 23 Cal.3d 168, 175 [151 Cal.Rptr. 671, 588 P.2d 811].) As previously indicated, substantial evidence supports the trial court's finding that the county does not exercise control over and direct the activities of the IHSS providers.

## DISPOSITION

The judgment is affirmed.

Woods (Fred), J., concurred.

**JOHNSON, J.,** Dissenting.—In my opinion In-Home Supportive Services (IHSS) providers are Los Angeles County employees for purposes of the Meyers-Milias-Brown Act (MMBA). My review of this appeal differs from the majority because I am convinced we should: (1) analyze this issue as a question of law; (2) exercise our own independent judgment to make our own factual determinations; and (3) decide the issue in light of the purposes of the MMBA. Furthermore, even if we analyze the issue using the common law indicia for determining whether an employer/employee relationship exists, I find the county is an employer of the IHSS providers.

## I. THE ISSUE WHETHER IHSS PROVIDERS ARE COUNTY EMPLOYEES UNDER THE MMBA IS A QUESTION OF LAW.

There are several grounds for analyzing the issue as a question of law. Those grounds are: (A) statutory interpretation of the MMBA is critical to our decision; (B) the Department of Social Services' regulations provide an undisputed factual basis for our review; (C) other reviewing courts have decided analagous issues as questions of law; and (D) the two common law cases which the majority relies on for determining the issue as one of fact are not applicable because they involve private rather than public employment.

A. *In Order to Decide the Issue We Must Interpret the MMBA, Welfare Code, and IHSS Regulations.*

The rule is well settled in California: interpretation and application of a statute is a question of law, not fact. (*Estate of Butler* (1980) 27 Cal.3d 781,

788 [166 Cal.Rptr. 711, 613 P.2d 1245]; also see 9 Witkin, Cal. Procedure (9th ed. 1989) Appeal, § 242, p. 247.) To analyze the issue before this court within its proper legal framework, we must construe the MMBA, Welfare Code and Department of Social Services' IHSS regulations. (See *post*, pp. 778-785.) Our interpretation and application of these statutes and regulations, therefore, are questions of law.

B. *The Department of Social Services' Regulations Provide an Undisputed Factual Basis for Review.*

The most relevant factual evidence in the record before us is the Department of Social Services' IHSS regulations because Los Angeles County and every other county in the state use them as the basis for supervising their IHSS programs. The regulations are quite detailed and are not disputed by either party, the trial court, or the majority. Since there is only a dispute as to their legal significance, the issue before us is a question of law.

Despite this, the majority asserts the issue is a question of fact. (Maj. opn., *ante*, p. 771.) To support its contention, the majority puts forth three examples of factual findings the trial court made which allegedly prove that the evidence before the trial court was conflicting. (*Ibid.*) It does not follow, however, that because the trial court made factual findings, the evidence before it was contradictory.

Like the majority, the trial court erred in analyzing the issue as a question of fact. In making its question of fact determination the trial court incorrectly relied on *Boire* v. *Greyhound Corp.* (1964) 376 U.S. 473 [11 L.Ed.2d 849, 84 S.Ct. 894], a federal *private* employment case. Since this is a public employment case, we should look to public rather than private employment cases as precedent. (See *post*, pp. 776-777.)

*Boire* is inapposite for another reason too. In *Boire* the United States Supreme Court held although the issue of whether Greyhound was an employer was a question of fact, this analysis would not apply in cases, like the present case, which "depended soley upon construction of" a statute. (*Boire* v. *Greyhound Corp., supra*, 376 U.S. 473, 481 [11 L.Ed.2d 849, 855].)

Since the trial court erroneously construed the issue as a question of fact, it is not surprising the court subsequently made factual determinations. Trial courts which have determined the issue before them as a question of fact would be remiss if they did not make factual determinations. Listing examples of the trial court's factual findings as the majority has done,

therefore, does not demonstrate the evidence before the trial court was conflicting.

In addition, the examples of factual findings which the majority cites are either irrelevant or insignificant indicators of an employment relationship, or could have been determined solely from the undisputed statutes and regulations.

The first example, the county "does not recommend a particular provider to a particular recipient," has no legal significance in the present case because that determination is irrelevant. (Maj. opn., *ante*, p. 772.) I am unaware of any California statute or decisional law in which the recommendation of one party to a second party concerning the future employment of a third party is used as a balancing factor or indicium to establish an employment relationship between the first and third parties.

Even if the example were germane, however, we can glean from the regulations the county *has* the right to recommend providers. The regulations specify: "The county shall make a reasonable effort to assist the recipient to obtain a service provider when the recipient is unable to provide one individually." (Reg. 30-767.132.) Since the regulations do not prohibit the counties from making specific referrals or recommendations, we can infer the counties maintain the *right* to make recommendations or refer in order to meet the "reasonable effort" mandate of the regulations.[1]

The majority's second example of the trial court's factual findings which are supposed to indicate contradictory evidence is the county exercises "no supervisory control over providers." (Maj. opn., *ante*, p. 772.) Again, however, the example falls short of the mark. Although the county's exercise of supervisory control is relevant to our analysis, it is an insignificant factor when compared to the controlling indicium of employment, the *right* to control, which is specified in the regulations. (See *post*, pp. 785-786.) Although we are marginally interested in how the county exercises its supervision over its IHSS providers, the determination of an employment relationship turns on this court's legal construction of the undisputed regulations which pertain to the county's right of authority, not its exercise. (*Ibid.*) The regulations spell out in great detail the supervisory control which the county has over its IHSS providers. (See *post*, pp. 782-785.)

There are three reasons the third example—"the manner and performance of their tasks being determined by the recipient and the provider"—

[1] Even on its own merits, the example fails. The record shows that social service workers in Los Angeles County actually recommended and referred providers to recipients.

does not show the evidence before the trial court was contradictory. (Maj. opn., *ante*, p. 772.) First, it does not directly address the issue before this court: whether the *county* has the *right* to control the manner and performance of the providers' work. Also, as the majority concedes, such a finding does not preclude the county from being deemed a joint, special or dual employer. (Maj. opn., *ante*, p. 772, citing *County of Los Angeles* v. *Worker's Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 405 [179 Cal.Rptr. 214, 637 P.2d 681].) As such an employer, the county is subject to the MMBA's "meet and confer" requirements. Finally, like the preceding examples, the regulations indicate the county has the right of control over the manner and performance of its IHSS employees' work. (See *post*, pp. 782-785.)

C. *Other Courts Have Analyzed Analagous and Related MMBA Issues as Questions of Law.*

When facts are undisputed, as here, California courts analyze the issue of whether an entity is an employer in the *public employment* context as a question of law.[2] (*In-Home Supportive Services* v. *Workers' Comp. Appeals Board* (1984) 152 Cal.App.3d 720, 729 [199 Cal.Rptr. 697], citing *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771 [100 Cal.Rptr. 377, 494 P.2d 1] and *Baugh* v. *Rogers* (1944) 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043].) Furthermore, in 68 Ops.Cal.Atty.Gen. 194 (1985), the Attorney General expressly approved the question of law analysis in *IHSS* and used it as the legal framework for analyzing the *exact* issue involved in this case. (*Id.*, at p. 196.)

The Ninth Circuit, in holding that San Francisco, Sacramento, and Solano Counties were employers of IHSS providers agreed: "Although the underlying facts are reviewed under the clearly erroneous standard, the legal effect of those facts—whether appellants are employers within the meaning of the FLSA—is a question of law."[3] (*Bonnette* v. *California Health and Welfare Agency* (9th Cir. 1983) 704 F.2d 1465, 1469.)

D. *Public Employment Cases Are the Relevant Precedent.*

The majority, without stating why, rejects the question-of-law framework of the public employment cases above. Instead, it invokes two *private* em-

---

[2] When the evidence is undisputed, the California Supreme Court also determines the issue whether one is an independent contractor or employee under the Workers' Compensation Act as a question of law. (*S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 [256 Cal.Rptr. 543, 769 P.2d 399].)

[3] Ironically, in *Bonnette*, IHSS providers sought appellate review based on a question of fact, not law. However, the court analyzed the issue as a question of law and still ruled in their favor.

ployment cases, *Kowalski* and *Housewright*, as legal authority for deciding the issue as a question of fact. (Maj. opn., *ante*, pp. 771, 773.) But these two cases do not apply here. They were not public employment cases, did not require the dispositive interpretation of various statutes, and were not concerned with the meaning of the MMBA or the collective bargaining rights of public employees.[4] In citing these two cases, the majority has overlooked the important distinction between public and private employment. In *County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn.* (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424], the California Supreme Court discussed this distinction with respect to the right to strike. (*Id.*, at p. 569.) Other courts have too: "[T]he employer-employee relationship in public employment is the product of law—constitutional, legislative and decisional—rather than the product of a contract as in private employment." (*City of San Diego v. American Federation of State etc. Employees* (1970) 8 Cal.App.3d 308, 312 [87 Cal.Rptr. 258].) "Nothing can be gained by comparing public employment with private employment; there can be no analogy in such a comparison." (*Perez v. Board of Police Commrs.* (1947) 78 Cal.App.2d 638, 647 [178 P.2d 537].)

One reason for the distinction between private and public employment is this: in public law, uniformity of decision is an important factor in a court's choice of legal framework. (*Sadduth v. California Emp. Stab. Com.* (1955) 130 Cal.App.2d 304, 311 [278 P.2d 946]; citing *Isenberg v. California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 41 [180 P.2d 11].) The Attorney General, in choosing the legal framework of question of law rather than fact, invoked the *Sadduth/Isenberg* principle of uniformity: ". . . while the usual test of an employment relationship (the extent of direction and control) would normally be a question of fact to be determined in each particular case, we recognize that 'in public law cases uniformity of decision is important, and where essential facts are not in conflict the question of the legal relations arising therefrom is a question of law.'" (68 Ops.Cal.Atty.Gen. 194, 196, *supra*.) Since the essential facts of the present case are the uniform regulations of the Department of Social Services, under *Sadduth/Isenberg* the present case is a question of law. (*Ante*, p. 774.)

---

[4] *Housewright* is also not relevant for an additional reason: it holds independent contractor/agent/employee issues are "largely" matters of fact, not law, "depending on all the circumstances of the relations of the parties." (*Housewright v. Pacific Far East Line, Inc.* (1964) 229 Cal.App.2d 259, 265 [40 Cal.Rptr. 208].) Therefore, even by applying the *Housewright* test to our case we still have no question of fact. The "circumstances" of the present case are the Legislature's statutory intent in enacting the MMBA and IHSS programs and the legal significance of the Department of Social Services' regulations. These questions of law are the "circumstances of the relations of the parties"; therefore, even under *Housewright* our issue should not be viewed as a question of fact.

Similarly, I think it is not coincidence the preamble of the MMBA expresses the Legislature's concern for uniformity: Section 3500 states the purpose of the MMBA is to improve relations between employers and employees in the public sector ". . . by providing a *uniform basis* for recognizing the right of public employees to . . . be represented . . . ." (Gov. Code, § 3500, italics added.)

I agree with the Attorney General's opinion and think the present case should be subject to the uniformity concerns and criteria of *Sadduth* and *Isenberg*. The IHSS regulations are "not in conflict," and all 58 counties must abide by them. Consequently, an appellate court's interpretation of the legal significance of the regulations, i.e., whether the county is an employer, should result in the same finding for any county in the state. That appears to me to be a question of law.

## II. THE ISSUE WHETHER IHSS PROVIDERS ARE COUNTY EMPLOYEES IS SUBJECT TO THIS COURT'S INDEPENDENT REVIEW.

Since the issue whether IHSS providers are employees of Los Angeles County is a question of law, I disagree with the majority's use of the substantial evidence test as the standard of review. When reviewing questions of law, the appellate court does not use the substantial evidence test because we are not bound by the factual determinations of the trial court. (*Southern California Edison* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014].) Since the public employer/not employer issue is a question of law, it is subject to this court's independent review.

## III. WHETHER IHSS PROVIDERS ARE COUNTY EMPLOYEES SHOULD BE DETERMINED WITHIN THE MEANING OF THE MMBA.

I further disagree with the majority because of its failure to address the statutory mandate of the MMBA. As the majority correctly writes, the issue has two parts: (1) whether the county is an employer of the IHSS providers (2) "within the meaning of the MMBA." (Maj. opn., *ante*, p. 767.) Yet, nowhere in its opinion does the majority ever tell us what it thinks is the meaning or purpose of the MMBA. Its analysis reduces the issue to the first part only, and uses only the common law factors in determining whether the county is an employer of the IHSS providers. Consequently, by not considering the purpose and intent of the MMBA, the majority has not placed the issue within its proper legal context.

Similarly, the majority rejects the *Bonnette* court's approach of broadly interpreting "employee" for purposes of the Fair Labor Standards Act. (Maj. opn., *ante*, p. 768.) However, it neither cites legal authority nor explains to us why "employee" or "employer" under the MMBA should not be interpreted just as broadly. (Maj. opn., *ante*, pp. 768, 771.) We should at least know the majority's policy considerations in making this determination.

On the other hand, in addition to *Bonnette*, there is persuasive precedent why we should decide our issue with respect to the policy and purposes of the MMBA.

In *Labor Board.* v. *Atkins & Co.* (1947) 331 U.S. 398 [91 L.Ed. 1563, 67 S.Ct. 1265], the United States Supreme Court examined ". . . more than technical and traditional common law definitions . . ." in defining the meaning of the broad terms "employer" and "employee" in the National Labor Relations Act (NLRA). (*Id.*, at p. 403 [91 L.Ed. at p. 1568].) Instead, the court thought it best to ". . . draw substance from the policy and purposes . . ." of the NLRA. (*Ibid.*)

Similarly, *Public Employees Assn. Inc.* v. *Board of Supervisors* (1985) 167 Cal.App.3d 797 [213 Cal.Rptr. 491] held "The Meyers-Milias-Brown Act parallels the National Labor Relations Act, [citation] and California courts should look to federal case law in interpreting the act." (*Id.*, at pp. 806-807.)[5] Likewise, since the inclusionary definitions of "employer" and "employee" in the MMBA are analogous to those in the NLRA, we too should "draw substance from policy" in defining who is an "employee" or "employer."[6]

The court in *In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.*, *supra*, 152 Cal.App.3d 720 construed the broad definition of "employee" in Labor Code section 3351 in the manner prescribed by the California Supreme Court. Given these broad statutory contours, the court believed that "an 'employment' relationship sufficient to bring the [Workmen's Compensation] act into play cannot be determined simply from technical contrac-

[5] The *Public Employees* approach of relying on federal precedent was validated by the California Supreme Court in *Building Material & Construction Teamsters'* v. *Farrell* (1986) 41 Cal.3d 651 [224 Cal.Rptr. 688, 715 P.2d 648]: "[f]ederal decisions have frequently guided our interpretation of state labor provisions the language of which parallels that of federal statutes." (*Id.*, at p. 658.) Even when the language is not parallel, when the ". . . federal precedents reflect the same interests as those underlying [a section of a statute], they furnish reliable authority in construing that section." (*Id.*, at p. 658.)

[6] Compare 29 United States Code Annotated, section 152, "The term 'employee' shall include any employee . . ." and MMBA, Government Code section 3501, "public employee" is ". . . any person employed by a public agency . . . ."

tual or common law conceptions of employment but must instead be resolved by reference to the history and fundamental purposes underlying the . . . Compensation Act."[7] (*Id.*, at p. 728 citing *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 777 [100 Cal.Rptr. 377, 494 P.2d 1].) The court commented: "[t]he definitional reach of these covered relationships [IHSS providers covered under workmen's compensation] is very broad." (152 Cal.App.3d at p. 728.) So too should be our construction of the definitional reach of the MMBA.

In concluding IHSS providers should be considered county employees for purposes of the MMBA, the Attorney General's office expressly affirmed the holdings of *In-Home Supportive Services* and *Bonnette* and stated its conclusion was "supported by 'the strong policy in California favoring peaceful resolution of employment disputes by means of arbitration' [citations] and allows for the salutary goals of the collective bargaining process [citations] to be met."[8] (68 Ops.Cal.Atty.Gen. 194, 199-200, *supra*.)

From the MMBA's legislative history we cannot infer the Legislature intended the courts to construe the Act narrowly. To the contrary, there is ample evidence in the legislative history suggesting the Legislature intended us to construe it broadly. Government Code section 3504, first introduced in Assembly Bill No. 1966, read: "The provisions of this chapter shall be liberally construed so as to properly effectuate the purpose of this chapter." (Assem. Bill No. 1966 (1961) p. 2). A month later Assembly Member Brown reintroduced section 3504 in the exact language it was later enacted: "The scope of representation shall include *all matters* relating to employment conditions and employer-employee relations, including, *but not limited to*, wages, hours, and other terms and conditions of employment." (Assem. Bill No. 2375 (1961) p. 2, italics added.) Although the section no longer specifically addressed construction of the whole chapter, "all matters" and "but not limited to" are manifestations of an intention supporting liberal construction of the Legislature as expressed in the first bill.

[7] Under Labor Code section 3351 an employee is ". . . every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . ."

[8] The majority summarily dismisses the Attorney General's opinion because it is "advisory and do[es] not carry the weight of law." (Maj. opn., *ante*, p. 768.) The opinion is of course not controlling, but ". . . it is nevertheless entitled to great respect." (*Sonoma County Bd. of Education* v. *Public Employment Relations Bd.* (1980) 102 Cal.App.3d 689, 699 [163 Cal.Rptr. 464] citing *Wenke* v. *Hitchcock* (1972) 6 Cal. 3d 746, 751-752 [100 Cal.Rptr. 290, 493 P.2d 1154] ["the opinions of the Attorney General have been accorded great respect by the courts"].) The majority, therefore, should at least explain why on its merits the opinion is not at least persuasive. The opinion is on point, indeed on all fours, and there are no cases which hold on or even allude to the issue addressed in the instant case except *In-Home Supportive Services* and *Bonnette, supra*.

The federal courts interpret the NLRA and the Fair Labor Standards Act to ". . . include all employees not specifically excepted." (*N.L.R.B.* v. *Monterey County B. & C. Trades Council* (1964) 335 F.2d 927, 930, fn. 4.) Applying federal precedent to interpret the MMBA, we should include IHSS providers. The exclusionary aspect of the MMBA's definition of "public employee" does not except those engaged in the work which IHSS providers perform from coverage. Section 3501 specifically excludes *only* "those persons elected by popular vote or appointed to office by the Governor of this state." (Gov. Code, § 3501, subd. (d).)

Interestingly, section 152 of the NLRA expressly excludes among other groups, those employed in ". . . domestic service of any family or person at his home, or any individual employed by his parent or spouse . . . ." (29 U.S.C.A. 152(3).) Since the MMBA is patterned after the NLRA and was enacted over 30 years after it, the California Legislature had the opportunity to parse the NLRA and debate its exclusions. Instead, our lawmakers decided to part from the NLRA and to include many groups which the NLRA specifically excluded.[9]

## IV. THE PURPOSE OF THE MMBA.

Section 3500 states the purpose of the MMBA: to "promote *full communication* between public employers and their employees *by providing a reasonable method of resolving disputes* regarding *wages, hours,* and *other terms and conditions* of employment between public employers and public employee organizations. . . . This chapter is intended to strengthen merit, civil service, and *other methods* of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."[10] (Gov. Code, § 3500, italics added.) The IHSS program then, even though it is not covered by merit or civil service regulations, is covered by section 3500's reference to "other methods."

Government Code section 3504 defines the issues which may be bargained: "The scope of representation shall include all matters relating to

---

[9]E.g., 29 United States Code Annotated, section 152 (3) also excludes agricultural workers.

[10]In *Los Angeles County Civil Service Com.* v. *Superior Court* (1978) 23 Cal.3d 55 [151 Cal.Rptr. 547, 588 P.2d 249] the California Supreme Court interpreted the purpose and intent of the MMBA: "According to its section 3500 the MMBA has two purposes: (1) to promote full communication between public employers and employees; (2) to improve personnel management and employer-employee relations within the various public agencies. Those purposes are to be achieved by establishing methods for resolving disputes over employment conditions and for recognizing the right of public employees to organize and be represented by employee organizations." (*Id.,* at p. 62.)

employment conditions and employer-employee relations, including, but not limited to, *wages, hours, and other terms and conditions of employment. . . .*" (Italics added.)

Government Code section 3505 states who must meet and confer with employees' representatives: "The governing body of a public agency, or such boards, commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment."

V. Because the County Is Able to Meet and Confer and Fully Communicate in Resolving Disputes With IHSS Providers About Wages, Hours, and Other Terms and Conditions of Employment, It Should Be Deemed an Employer of Its IHSS Employees.

There is no dispute the county could meet and confer if it chose to do so. Consequently, if the county has decisionmaking authority over the wages, hours, and other terms and conditions of employment, it is an employer which could fully communicate in resolving disputes with the IHSS providers.[11] The regulations of the Department of Social Services make it very clear the county is such an employer:

*Wages:* (1) "(County) Social service staff shall determine the amount of the IHSS payment required. . . ." (Reg. 30-764.111.); (2) The "amount of compensation available for . . . providers shall be determined by county social services staff" (Reg. 30-764.113.); (3) The county may reduce the hourly rate of payment to providers (Reg. 30-766.153(2)); (4) "The base rate of compensation *used by the county* shall not be less than the legal minimum wage. . . ." (Reg. 30-764.21, italics added); (5) "The County will determine if payment in excess of the base rate is necessary." (Reg. 30-764.23.); (6) For IHSS teaching and demonstration services "The hourly rate of provider compensation shall be the same as that paid (by the county) to other IHSS providers. . . ." (Reg. 30-757.181.); (7) The county will inform the state of "the hourly rate paid the provider" for teaching and

---

[11] The majority alleges because the regulations "define employer as the recipient and employee as the provider," the county is not an employer. (Maj. opn., *ante,* p. 770, fn. 3.) There are two reasons why the conclusion does not follow. First, although regulation 30-753 defines the legal relationship between providers and recipients, it neither defines nor addresses the issue before this court, the *county's* legal relationship with the providers. Second, as the majority acknowledges (maj. opn., *ante,* pp. 772-773), even if the recipients are employers, the county may still be deemed a special, joint, or dual employer. (*County of Los Angeles* v. *Workers' Comp. Appeals Bd., supra,* 30 Cal.3d 391, 405.)

demonstration services (Reg. 30-757.185(g).); (8) The county may authorize additional funding for the IHSS program (Reg. 30-766.152).

From the above it is evident the county makes so many decisions about wages, that if IHSS providers need to resolve disputes about wages they *must* meet and confer with the county.

*Hours*: County social "Services staff shall calculate the number of hours per week needed for each of the services. . . ." (Reg. 30-763.22.) Furthermore, the county authorizes the number of hours a provider must work by assigning the specific tasks which a provider must perform in the recipient's home.[12] (Regs. 30-757 et al.)

As was the case with wages, if IHSS providers have disputes regarding the number of hours per week they must work, the county is the party with whom they *must* negotiate.

*Other terms and conditions of employment*: The county delineates the specific tasks IHSS providers perform. The county's social service workers decide whether IHSS providers will: sweep, vacuum, wash and wax floor surfaces; wash kitchen counters and sinks; clean the bathroom; store food and supplies; take out the garbage; dust and pick up; clean the oven and stove; clean and defrost the refrigerator; change bed linen; prepare meals by washing vegetables, trimming meat, and cutting food into bite-sized pieces; wash, dry, and put away dishes, pots, and utensils; wash and dry laundry; mend, iron, and fold clothes; perform bowel and bladder care such as assistance with enemas, emptying of catheter, assistance with bed pans, application of diapers, and assistance with getting on and off commode or toilet; give routine bed baths; rub skin to promote circulation; care for and assist with prosthetic devices; assist with routine menstrual care; remove high grass, weeds, rubbish, ice or snow from walkways and entrances. (Reg. 30-757.) Therefore, since the county *alone* decides the tasks for which IHSS workers are responsible, it can meet and confer and fully communicate in resolving disputes about the assignment or performance of those tasks.

In addition to deciding the tasks, the regulations provide it is the county which monitors the performance of the IHSS providers: (1) "The county welfare department shall not delegate the responsibility to do needs assessments to any other agency or organization" (Reg. 30-761.23); (2) "A needs assessment and authorization form shall be completed for each case. . . ." (Reg. 30-761.27); (3) "Needs assessments are performed . . . prior to the

---

[12]Recipients and providers together decide which time of day is most convenient for them.

end of the twelfth calendar month from the last assessment . . . [and] whenever the county has information indicating that the recipient's physical/mental condition, or living/social situation has changed" (Reg. 30-761.2); (4) "Social service staff shall determine the need for services based on . . . information social service staff consider necessary and appropriate to assess the recipient's needs" (Reg. 30-761.264).

The county's social workers are in the field; thus, they are aware of and able to exert significant influence over the particular circumstances of an IHSS provider's terms and conditions of employment. Ultimately, if the county determines the provider is not performing the authorized services, the county has the right to discharge the provider by changing the recipient to another delivery mode. (Reg. 30-767.133.)[13]

The county concedes social service workers do in fact monitor the performance of IHSS providers. However, even without the county's testimony we would be able to infer that a diligent social worker, upon receipt of relevant information, would intervene on behalf of a recipient and direct the IHSS employee to make necessary changes. Since so many of the IHSS recipients are by definition handicapped, alone and/or unable to fend for themselves, the social service workers' supervision might be the only guaranty the work is being correctly done. Thus it is not surprising the above regulations give social service workers the power and responsibility to do so.

The county monitors and evaluates the performances of IHSS providers who might go into recipients' homes for "teaching and demonstration" purposes: "Within seven months after completion of teaching and demonstration [by IHSS providers] in a specific case, [county] social service staff shall report . . . to the Department on the results of the service. The report shall include: (a) the tasks taught, (b) the instructional method used, (c) the delivery method used, (d) the frequency and duration of the instruction." (Reg. 30-757.185, subds. (a)-(d).) In order to administer the above, we can infer the county's social service workers would be required to guide and assess the performance of its IHSS providers.

Looking beyond what is specified in the regulations to other possible employment issues, the county is able to fully communicate with providers about (but not limited to): (1) methods for resolving minor disputes between recipients and providers; (2) more efficient systems of linking providers with recipients; (3) terminations; (4) situations in which social workers are trying to convince recipients that providers are not doing a good job; (5) vacations;

---

[13] The recipient may also discharge the provider.

(6) holidays; (7) county policies which regulate providers who work for multiple recipients; (8) sick leave; and (9) disputes over paychecks.

Under the present scheme, it is obvious the state and recipient cannot meet and confer and fully communicate in resolving disputes about the above issues.[14] Although the state mails the providers their checks, it has little authority over the IHSS providers' wages, hours, and other terms and conditions of employment. Also, the state is too far removed from the work which IHSS providers perform in the homes of recipients to be in a *realistic* position to resolve disputes. Similarly, recipients have little or no say over IHSS providers' wages, hours, or other terms and conditions of employment.

In conclusion, for purposes of the MMBA, the county should be considered an employer of the IHSS providers. The county, and only the county, can fully communicate in resolving disputes which IHSS providers might have about wages, hours, and other terms and conditions of employment.

## VI. THE COUNTY IS ALSO AN EMPLOYER OF THE IHSS PROVIDERS UNDER THE COMMON LAW TESTS.

The majority lists one primary and four secondary common law factors which are customarily used to determine the existence of an employer/employee relationship. (Maj. opn., *ante*, p. 770.) Those factors are the right of control, the power to discharge, payment of salary, nature of services, and parties' belief as to the employment relationship. (*Service Employees Internat. Union* v. *Superior Court* (1982) 137 Cal.App.3d 320, 326 [187 Cal.Rptr. 9].) Even if we were to ignore the purposes of the MMBA and assume arguendo the *Service Employees Internat. Union* indicia were the only controlling factors, the county should still be deemed an employer.

The majority concludes: "the county does not exercise control over and direct the activities of the IHSS providers." But that misses the point,

---

[14] We should reject the county's divided authority argument. The county maintains it is not an employer because recipients can hire and discharge IHSS providers, and the state funds the program. This is virtually the same losing "divided authority" argument the county made in *Los Angeles County Civil Service Com.* v. *Superior Court, supra,* 23 Cal.3d 55. In *Los Angeles County Civil Service Com.* the county commissioners claimed they had no duty to meet and confer under the MMBA because ". . . the board of supervisors rather than the commission administers salaries and benefits and that the commission therefore is left with little to bargain with in the meet-and-confer process." (*Id.*, at p. 64.) The California Supreme Court rejected the argument because "Los Angeles County's decision to divide decision-making authority in labor matters does not affect bargaining over . . . layoff rules . . . or excuse noncompliance with Section 3505." (*Ibid.*)

because of all the common law factors the *right* of control is determinative. "It is not the control actually exercised, but that which *may be exercised*, i.e., the right of control, which determines the issue of employment. . ." (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 15, p. 31.) Even the majority's private employment case (*Kowalski* v. *Shell Oil Co.* (1979) 23 Cal.3d 168, 175 [151 Cal.Rptr. 671, 588 P.2d 811]) agrees with Witkin and the well-established doctrine cited in *McFarland* v. *Voorheis-Trindle Co.* (1959) 52 Cal.2d 698 [343 P.2d 923]: " 'The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship. [Citations.] As indicated, the control need not be exercised.' " (*Id.* at p. 704.)

In the present case, the county has the *right* to control the activities of the IHSS providers whether it exercises it or not. There is no need to repeat here what I have previously shown under the regulation: the county enjoys almost complete *authority* over the IHSS worker's wages, hours, other terms and conditions of employment. (See *ante*, pp. 782-785.) IHSS recipients cannot authorize payment of IHSS funds to providers for any service which the county has not approved: *if the county does not specify floors are to be washed, meat is to be trimmed, or weeds are to be cut, the provider will not be paid government funds for washing floors, trimming meat, or cutting weeds.* Under the regulations, only the county has the right of control to make such authorizations.

Even under the four secondary factors enunciated in *Service Employees Internat. Union, supra,* the county should be deemed an employer. As discussed above, the county has the right to discharge IHSS providers and to authorize payment of IHSS salaries. (See *ante*, pp. 783-784.) Similarly, the 12,000 providers who appellant represents have a belief the county is their employer, that is why they want the county to meet and confer with their representatives. The final secondary factor is the nature of the service. The IHSS providers work in recipients' homes on the county's behalf, enabling the county to provide the recipients with needed services. If the providers did not perform such work, the county would be required either to hire civil service employees or sub-contract the work to an independent contractor. (Reg. 30-767.1.) Under all three plans, however, the county supervises IHSS services, no matter which delivery plan it chooses. (*Ibid.*)[15]

---

[15] The majority concludes the IHSS providers are not county employees because the intent of the Legislature in allowing the county to choose between delivery plans was to ". . . provide alternatives which do not create such a relationship [employer/employee] between the county . . ." and its IHSS providers. (Maj. opn., *ante*, p. 771, fn. 3.) The conclusion is unfounded. The purpose and legislative intent of the In-Home Supportive Services program is

The Attorney General's opinion, using the *Service Employees Internat. Union, supra,* factors, concluded: ". . . the IHSS workers [providers] are county employees for the purposes of collective bargaining. The counties control the rate and method of payment, determine the amount and nature of the services required by the recipient, and are significantly involved in supervising the worker's job performance." (68 Ops.Cal.Atty.Gen. 194, 199, *supra.*) I agree.

In conclusion, because the county can fully communicate in resolving disputes about wages, hours, and other terms and conditions of employment, *and* because the county maintains the right of control over its IHSS providers, for collective bargaining purposes under the MMBA, Los Angeles County is an employer of the IHSS providers. I, therefore, would reverse the judgment of the trial court and grant appellant's request for declaratory judgment.

Appellant's petition for review by the Supreme Court was denied February 21, 1991. Mosk, J., Broussard, J., and Kennard, J., were of the opinion that the petition should be granted.

expressly stated in Welfare and Institutions Code sections 12300 and 12301; nowhere is there any suggestion the reason the Legislature affords the counties a choice of delivery plans is to enable them to avoid being deemed employers.