[Civ. No. 26964. Fourth Dist., Div. One. Dec. 21, 1984.]

MICHAEL WEISMAN, Plaintiff and Appellant, v.
BLUE SHIELD OF CALIFORNIA, Defendant and Respondent.

*See 39 Cal.3d 464 for Supreme Court opinion.

**COUNSEL**

Shernoff & Levine, Harvey R. Levine and Carl J. DePasquale for Plaintiff and Appellant.

Hassard, Bonnington, Rogers & Huber, William B. Sturgeon and B. Thomas French for Defendant and Respondent.

**OPINION**

**BUTLER, J.**—Michael Weisman, a medical doctor, appeals a judgment entered on a jury verdict denying punitive damages against Blue Shield of California for wrongful failure to pay claims for psychoanalytic treatment. He claims instructional error and error in awarding costs for witnesses to Blue Shield. We hold the court properly instructed the jury, the witness costs were correctly allowed, and affirm.

I

Weisman was a full time assistant professor at the medical school of the University of California at San Diego commencing in 1975, eventually attaining tenure. During the years 1975-1981, Weisman was also employed part time at the Veterans Administration Hospital in San Diego.

In the fall of 1975, Weisman experienced emotional problems. A psychiatrist friend suggested he see Dr. Alvin Robbins, a psychoanalyst. Robbins pointed out to Weisman a government-wide service benefit plan (FEP) administered by Blue Cross and Blue Shield was available to him by reason of his part-time federal employment. FEP provided coverage for nervous and mental illness to a lifetime maximum of $50,000. Weisman enrolled in the FEP plan for this reason and then commenced psychoanalysis with Robbins at the rate of four therapy sessions each week with the understanding such treatment could go on for some four to six years. In fact, the treatment was terminated after five years by mutual agreement in 1981.

II

In 1978, Weisman sued Blue Shield for damages for breach of the duty of good faith and fair dealing in failing timely to pay or to pay for his

psychiatric treatment or to settle his claims in an equitable manner or to provide a reasonable explanation for denial of benefits. He sought $2 million in punitive damages. In 1980, Weisman filed a supplemental complaint pleading like causes of action and damages for Blue Shield's 1978 conduct.

The jury found Blue Shield breached the covenant by reducing the psychoanalytical therapy sessions from four to two per week, delayed reinstatement of the sessions to four a week, caused review of the need for additional sessions to be accomplished by unqualified persons and failed timely to process and pay Weisman's claims for Robbins' services. The jury awarded Weisman $25,000 compensatory damages and declined to award any punitive damages. Appealing, Weisman first contends the court committed reversible error on the punitive damage instructions given to the jury.

## III

Weisman tried the punitive damage phase solely on the theory of malice. The court at Weisman's request gave the jury BAJI Instruction No. 14.71 on punitive damages.[1] Blue Shield asked for and the court gave the jury a modified version of BAJI No. 14.72:[2] "You are instructed that a person acts with conscious disregard of the rights of others when he is aware of the probable consequences of his conduct and wilfully and deliberately fails to avoid those consequences."

Weisman contends the court erred in giving BAJI No. 14.72. We restate his argument: the phrase "conscious disregard" as used in Civil

---

[1]BAJI No. 14.71 as given by the court: "If you find that the plaintiff suffered damages as a proximate result of the conduct of the defendant on which you based a finding of liability, you may then consider whether you should award punitive or exemplary damages against the defendant for the sake of example and by way of punishment. [¶] You may in your discretion award such damages, but only if you find by a preponderance of the evidence that the defendant was guilty of oppression or fraud or malice in the conduct on which you base your finding of liability. [¶] Malice means conduct which is intended by the defendant to cause injury to the plaintiff or is carried on by the defendant with a conscious disregard for the rights of the plaintiff. [¶] Oppression means subjecting a person to cruel and unusual hardship in conscious disregard of that person's rights. [¶] Fraud means an intentional misrepresentation, deceit or concealment of a material fact known to the defendant, with the intention on the part of the defendant of thereby depriving a person of some property or legal right or otherwise causing him harm. [¶] The law provides no fixed standard as to the amount of such punitive damages but leaves the amount to the jury's sound discretion, exercised without passion or prejudice. [¶] In arriving at any award of punitive damages, you are to consider the following things: [¶] First, the reprehensibility of the conduct of the defendant; [¶] Second, the amount of punitive damages which will have a deterrent effect on the defendant in the light of defendant's financial condition; and [¶] Third, that the punitive damages must bear a reasonable relationship to the actual damages."

[2]BAJI No. 14.72 (1981 rev.) reads as follows. The underlined portions were omitted by the court: "A person acts with conscious disregard of the rights or safety of others when [he] [she] is aware of the probable dangerous consequences of [his] [her] conduct and wilfully and deliberately fails to avoid those consequences."

Code section 3294, subdivision (c)(1), as amended in 1980, effective January 1, 1981 (§ 3294, subd. (c)(1)),[3] to define malice is clear on its face; BAJI No. 14.71 incorporates that definition of malice; further to define conscious disregard to require an awareness of consequences of conduct and a wilful and deliberate failure to avoid those consequences is an impermissible addition to his burden of proof.

In other words, Weisman contends BAJI Nos. 14.71 and 14.72 when given in tandem create a two-pronged test for section 3294, subdivision (c)(1) malice. First, there must be an understanding of the rights of others such that there can be and is a conscious disregard of those rights. Second, the disregard must be wilful and deliberate with knowledge of the consequences. Briefly stated, Weisman contends the phrase "conscious disregard" is clear on its face; such conduct is itself a deprivation of rights with resultant consequences; no further elucidation is required.[4]

BAJI No. 14.72 as modified and given by the court tracks language in *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], holding the conduct of an alcoholic with prior drunk driving offenses operating a motor vehicle while intoxicated may constitute Civil Code section 3294 malice as in effect prior to the 1980 amendments if the act is performed under circumstances which disclose a conscious disregard of the probable dangerous consequences. "We concur with the *Searle* observation that a conscious disregard of the safety of others may constitute malice within the meaning of section 3294 of the Civil Code. In order to justify an award of punitive damages on this basis, *the plaintiff must establish that the defendant was aware of the probable dangerous consequences*

---

[3]Civil Code section 3294 provides, in pertinent part: "(a) In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

". . . . . . . . . . . . . . . . . . . .

"(c) As used in this section, the following definitions shall apply:

"(1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others."

The trial was held after the effective date of these amendments. Weisman concedes the section 3294, subdivision (c)(1) amendment codifies California punitive damage case law defining malice in these circumstances as conduct carried on with a conscious disregard of the rights of others.

[4]Adding to the BAJI No. 14.72 instructional error, according to Weisman, was final argument by Blue Shield's counsel to the effect the jury should consider whether any person in the case "actually intended" to cause injury or whether any Blue Shield employee knew of Weisman's rights and "willfully and deliberately disregarded" those rights. Weisman's counsel objected and the court appropriately admonished the jury his instructions and not counsel's were to be followed by the jury. The court gave the modified BAJI No. 14.72 to the jury without objection from Weisman. The admonishment and subsequent instruction cured any error occasioned by the argument. We do not further pursue Weisman's contention on this point.

*of his conduct, and that he wilfully and deliberately failed to avoid those consequences."* (*Taylor, supra,* at pp. 895-896, italics added.)

The *Searle* observation is made in *G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22 [122 Cal.Rptr. 218], as the wrap-up to an exhaustive analysis of cases dealing with punitive damages and the divergent definitions explicating the concept of malice to support an award of exemplary damages. "We suggest *conscious disregard of safety* as an appropriate description of the *animus malus* which may justify an exemplary damage award when nondeliberate injury is alleged." (*Id.,* at p. 32.)[5]

IV

*Taylor* adopts *Searle*'s phrase "conscious disregard" to describe the state of mind required to support an award of punitive damages. The 1980 amendment adding subdivision (c)(1) to Civil Code section 3294 codifies that definition of malice. *Taylor* goes on to explain the kind of conduct that demonstrates "conscious disregard." The plaintiff must establish the defendant was aware of the probable consequences of his conduct and wilfully and deliberately failed to avoid those consequences. Weisman would limit the second prong of the *Taylor* formulation to the factual circumstances there presented; he says the formulation does not fit his case. We disagree. (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 810 [174 Cal.Rptr. 348]; *Nolin* v. *National Convenience Stores, Inc.* (1979) 95 Cal.App.3d 279, 283-286 [157 Cal.Rptr. 32].) "There is not and there never was one rule of law for intoxicated driving cases and another rule of law for other types of cases. Cases are decided on the basis of general legal principles, not the categories into which particular cases might be pigeonholed." (*Dawes* v. *Superior Court* (1980) 111 Cal.App.3d 82, 90 [168 Cal.Rptr. 319].)

*Taylor*'s second prong, claimed inapplicable by Weisman, the probable consequences of the conscious disregard conduct accompanied by a wilful and deliberate failure to avoid such consequences, is not new. "However, since 1974 at the latest, and probably since a much earlier date, the term 'malice' as used in Civil Code section 3294 has been interpreted as including a conscious disregard of the probability that the actor's conduct will result in injury to others. [Citations.] Even in *Gombos* v. *Ashe* [(1958) 158 Cal.App.2d 517 (322 P.2d 933)], the decision said by defendants to be controlling, the court recognized that 'criminal indifference towards the ob-

---

[5]We note with interest this court in 1960 adopted the concept of conscious disregard for the rights of others as constituting malice. (*Roth* v. *Shell Oil Co.* (1960) 185 Cal.App.2d 676, 682 [8 Cal.Rptr. 514].)

ligations owed to others' might be 'malice' within the meaning of Civil Code section 3294. [Citation.]'' (*Dawes* v. *Superior Court, supra,* 111 Cal.App.3d at p. 88.) A conscious and callous indifference to, or disregard of, probable harm as to a dangerous railroad crossing supports an award of punitive damages. (*Seimon* v. *Southern Pac. Transportation Co.* (1977) 67 Cal.App.3d 600, 607 [136 Cal.Rptr. 787].) An inattention to the danger of a slip and fall on an oily service station driveway demonstrates "a complete lack of concern regarding the harmful potential—the probability and likelihood of injury. The entire nature of defendant's operation, as it was presented to the jury, reflected defendant's overriding concern for a minimum-expense operation, regardless of the peril involved." (*Nolin* v. *National Convenience Stores, Inc., supra,* 95 Cal.App.3d at p. 288.)

Here, the breach of the covenant of good faith and fair dealing supports the award of compensatory damages. Something more is required, for punitive damages. (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 462-463 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65-66 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922 [148 Cal.Rptr. 389, 582 P.2d 980].) "The breach of the covenant of good faith and fair dealing in the context of disability insurance does not, however, automatically warrant the imposition of punitive damages. To justify an award of punitive damages, the insured must still establish that the insurer acted with the requisite quality of intent to award punitive damages. [Citations.] To satisfy this requirement, the insured must prove that the insurer wilfully and deliberately failed to take the steps necessary to avoid the adverse consequences that the unwarranted denial of its claim would have." (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 277 [203 Cal.Rptr. 672].)

*Taylor's* second prong is a semantic distillation of the *conduct,* characterized by the cases in varying terms, which evinces a conscious disregard of the rights or safety of others. Contrary to Weisman's view of the matter, BAJI No. 14.72 defines and makes certain the threshold over which the plaintiff must step to sustain a claim for punitive damages. Otherwise, conduct evidencing the breach of the covenant of good faith and fair dealing which is compensated in general damages would serve as the basis for an award of punitive damages. BAJI No. 14.72 avoids this possibility by its requirement the *animus malus* implicit in the concept of an award of punitive damages must be identified by the defendant's awareness of the probable consequences of conduct and wilful and deliberate failure to avoid such consequences.

The instruction was proper. We find no error.

V

■ Weisman attacks the award by the court to Blue Shield of part of the costs incurred by Blue Shield for the testimony of two doctors, Gabby and Lunsky, arguing the award is barred as the doctors are "regular employees" of Blue Shield, and one expert witness, Dr. Culbertson, claiming his testimony was not reasonably necessary. Code of Civil Procedure section 998, subdivision (c), provides if a defendant's offer to allow judgment to be taken is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall pay the defendant's costs from the time of the offer. Additionally, the court may require the plaintiff to pay a reasonable sum to cover costs of expert witnesses "who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant."

The term "regular employee" is not defined in Code of Civil Procedure section 998. ■ An employee is an individual who performs services subject to the right of the employer to control both what shall be done and how it shall be done and an employer is a person for whom an individual performs services as an employee. (*Key Ins. Exchange* v. *Washington* (1970) 7 Cal.App.3d 209, 212 [86 Cal.Rptr. 542]; Code Civ. Proc., § 706.011, subds. (b) and (c).) ■ Dr. Gabby engaged in private practice as a psychiatrist. He also acted as a medical adviser to Blue Shield since 1966, spending two to four hours a month reviewing medical records for Blue Shield as an independent contractor. Dr. Lunsky was self-employed as an evaluator of psychiatric claims for insurance companies and attorneys engaged in workers' compensation law. He also carried on a private practice in psychiatry. During this time, he acted as a medical adviser for Blue Shield reviewing psychiatric claims and was paid an hourly rate. He spent about one day a week at the Blue Shield office.

The court heard the testimony offered by those doctors as to their work as independent contractors for Blue Shield. Substantial evidence supports its conclusion they were not employees of Blue Shield, regular or otherwise.

The court awarded costs for Dr. Culbertson's testimony. Weisman claims his services were not "reasonably necessary." *Stenzor* v. *Leon* (1955) 130 Cal.App.2d 729, 735 [272 P.2d 802], holds the burden is on the claimant to establish the propriety of a claim for costs when challenged. The allowance is within the discretion of the court and the award will not be disturbed absent an abuse of discretion. The court is in the best position to evaluate the necessity for Dr. Culbertson's testimony, who was the only independent witness called by either side. The award of Dr. Culbertson's costs was proper.

Judgment affirmed.

Wiener, Acting P. J., and Work, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 20, 1985.