TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 91-1104 |
| of | : | |
| | : | OCTOBER 6, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DaVIGO | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE KENNETH L. MADDY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. Is an employer who has contracted with a health care provider to conduct a pre-employment physical examination upon an applicant for employment required, upon request, to disclose to the applicant the results of the examination?

2. Is a health care provider contracted by an employer to conduct a pre-employment physical examination upon an applicant for employment required, upon request, to disclose to the applicant the results of the examination?

CONCLUSIONS

1. An employer who has contracted with a health care provider to conduct a pre-employment physical examination upon an applicant for employment is not required, upon request, to disclose to the applicant the results of the examination.

2. A health care provider contracted by an employer to conduct a pre-employment physical examination upon an applicant for employment is not required, upon request, to disclose to the applicant the results of the examination.

ANALYSIS

We consider herein the situation of a private employer who requires an applicant for a particular job to submit to a pre-employment physical examination conducted by a health care provider. The examination is conducted at the request and expense of, and the results are provided to, the employer for the sole purpose of determining the applicant's physical ability to perform the duties of the job.

1.                                                                                      91-1104

We are asked whether the employer or, in the alternative, the health care provider would be required, upon request, to disclose to the applicant the results of the examination.[1]  We conclude that neither the employer nor the health care provider would be so required.

1.	Disclosure by the Employer

The first inquiry concerns the obligation of an employer to disclose to an applicant for employment the results of a pre-employment physical examination conducted on behalf of and reported to the employer by a health care provider.  The statute requiring analysis is Labor Code section 1198.5, subdivision (a).[2]  It provides:

"Every employer shall at reasonable times, . . . upon the request of an employee, permit that employee to inspect such personnel files which are used or have been used to determine that employee's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action."

It will be assumed for purposes of this analysis that the records which are sought to be disclosed are part of the "personnel files" maintained by the employer and that such records have not been signed by the applicant.[3]

In analyzing the provisions of section 1198.5, we are "to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.)  To be avoided are "those constructions which lead to mischief or absurdity." (*People* v. *Jeffers* (1987) 43 Cal.3d 984, 998-999.)  The words of a statute are to be given "their usual and ordinary meaning." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501; see *Schmidt* v. *Superior Court* (1987) 43 Cal.3d 1060, 1065-1066.)  "If a statute's language is clear, then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 8.)  Finally, we note that "[t]he contemporaneous construction of a new enactment by the administrative agency charged with its enforcement, although not controlling, is entitled to great

---

[1]This analysis concerns the obligations of private employers.  Consequently, we do not examine certain provisions (e.g., Civ. Code, §§ 1798-1798.40) which may be pertinent in connection with public employment.  The scope of this analysis is also limited to disclosures upon request.  We expressly do not consider subpoena and other powers attendant to litigation under such statutory schemes as the Americans with Disabilities Act (42 U.S.C. §§ 12117, 12133, 12188), the Fair Employment and Housing Act (Gov. Code, § 12960 et seq.), and Evidence Code section 1158.  It is further assumed for purposes of this analysis that the pre-employment physical examination is conducted under circumstances which comply with all other provisions of law, including the regulations of the Equal Employment Opportunity Commission (29 C.F.R. §§ 1630.13, 1630.14) and the Fair Employment and Housing Commission (Cal. Code Regs., tit. 2, § 7294.0).  Finally, we do not consider herein any theory relating to liability for negligent failure to disclose a diseased or dangerous condition revealed in a physical examination. (Cf. *Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 558-559.)

[2]All statutory references to the Labor Code prior to footnote 4 are by section number only.

[3]Section 432 provides:

"If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request."

weight. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com* (1987) 43 Cal.3d 1379, 1388-1389.)

Subdivision (a) of section 1198.5 refers to an "employee." An "employee" is commonly defined as one who performs services for another in exchange for wages or a salary. (Webster's New Internat. Dict. (3d ed. 1966) p. 743.) In differing contexts, the Legislature has defined the term "employee," such as "any individual who performs services subject to the right of the employer to control both what shall be done and how it shall be done." (Code Civ. Proc., § 706.011, subd. (b).)

The courts have recognized that performing a service or type of work is a necessary element in establishing an employment relationship. (See *Briggs* v. *Lawrence* (1991) 230 Cal.App.3d 605, 615-616; *Moses* v. *DeVersecy* (1984) 157 Cal.App.3d 1071-1074.) "An employee is an individual who performs services . . . ." (*Weisman* v. *Blue Shield of California* (1984) 163 Cal.App.3d 61, 68.) "`[A] person performing work for another . . . is . . . an "employee."'" (*Key Ins. Exchange* v. *Washington* (1970) 7 Cal.App.3d 209, 212.)

Even when the term "employee" is broadly defined to include "trainees, beginners, apprentices, or learners" (29 U.S.C. § 203; *Walling* v. *Portland Terminal Co.* (1947) 330 U.S. 148, 151-153), the individual must render services in working for another to be considered an employee (see *McLauglin* v. *Ensley* (4th Cir. 1989) 877 F.2d 1207, 1209-1210; *Donovan* v. *American Airlines, Inc.* (5th Cir. 1982) 686 F.2d 267, 271-273).

Finally, we note that the Labor Commissioner has consistently interpreted section 1198.5 as being inapplicable to job applicants. Given the plain language of the statute, as well as the numerous authorities indicating that a job applicant is not an employee in other contexts, we believe that the Labor Commissioner's interpretation is correct.

No other statute requires our analysis in answering the first question. We thus conclude that an employer who has contracted with a health care provider to conduct a pre-employment physical examination upon an applicant for employment is not required, upon request, to disclose to the applicant the results of the examination.

2.      Disclosure by the Health Care Provider

The second inquiry concerns the obligations of a third-party independent health care provider who conducts a pre-employment physical examination on behalf of and for the benefit of an employer. The key statute requiring our analysis is Health and Safety Code section 1795.12, subdivision (a).[4] It states:

> "Notwithstanding Section 5328 of the Welfare and Institutions Code, and except as provided in Sections 1795.14 and 1795.16, any adult patient of a health care provider, any minor patient authorized by law to consent to medical treatment, and any patient representative shall be entitled to inspect patient records upon presenting to the health care provider a written request for those records and upon payment of reasonable clerical costs incurred in locating and making the records available. . . . A health care provider shall permit this inspection during business hours within five working days after receipt of the written request. The inspection

---

[4]All section referenced hereafter to the Health and Safety Code are by section number only.

shall be conducted by the patient or patient's representative requesting the inspection, who may be accompanied by one other person of his or her choosing."[5]

In addition, section 1795 provides the legislative intent behind section 1795.12. Section 1795 states:

"The Legislature finds and declares that every person having ultimate responsibility for decisions respecting his or her own health care also possesses a concomitant right of access to complete information respecting his or her condition and care provided. Similarly, persons having responsibility for decisions respecting the health care of others should, in general, have access to information on the patient's condition and care. It is, therefore, the intent of the Legislature in enacting this division to establish procedures for providing access to health care records or summaries of those records by patients and by those persons having responsibility for decisions respecting the health care of others."

The issue, then, is whether an applicant for employment who submits to a physical examination by a health care provider designated by the employer, for the purpose of determining the applicant's ability to perform safely and efficiently the duties of the job, is the "patient of a health care provider" within the meaning of section 1795.12, subdivision (a).

As previously indicated, our task in construing any statute such as section 1795.12 is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. The words of the statute are first examined, each rendered significance according to its usual and ordinary import, construed in harmony with each other, in the context of the whole, in keeping with sound public policy, and in the furtherance of a reasonable and common sense legislative objective. (*Dyna-Med, Inc. v. Fair Emp. & Housing Com., supra,* 43 Cal.3d 1379, 1386-1387; *Kobey v. Morton* (1991) 228 Cal.App.3d 1055, 1059.)

A "health care provider" is any licensed (1) health facility, (2) clinic, (3) home health agency, (4) physician and surgeon, (5) podiatrist, (6) dentist, (7) optometrist, (8) chiropractor, (9) marriage, family, and child counselor, or (10) clinical social worker. (§ 1795.10, subd. (a).) A "patient" is defined simply as ". . . a patient or former patient of a health care provider." (§ 1795.10, subd. (c).)

"Patient records" are described in subdivision (d) of section 1795.10 as records of a health care provider " . . . relating to the health history, diagnosis, or condition of a patient, or relating to treatment provided . . . to the patient." Section 1795.20, subdivision (b) requires to be contained in the summary record for each injury, illness, or episode any information relative to the following:

"(1) Chief complaint or complaints including pertinent history.

"(2) Findings from consultations and referrals to other health care providers.

"(3) Diagnosis, where determined.

"(4) Treatment plan and regimen including medications prescribed.

---

[5]Welfare and Institutions Code section 5328 concerns the confidentiality of records obtained in the course of providing mental health services. Section 1795.14 concerns a minor's patient records, and section 1795.16 authorizes filing suit "to enforce the obligations prescribed by Section 1795.12."

"(5) Progress of the treatment.

"(6) Prognosis including significant continuing problems or conditions.

"(7) Pertinent reports of diagnostic procedures and tests and all discharge summaries.

"(8) Objective findings from the most recent physical examination, such as blood pressure, weight, and actual values from routine laboratory tests."

Subdivision (d) of section 1795.20 requires the summary to also contain a list of all current medications prescribed, including dosage, and any sensitivities or allergies to medications recorded by the provider.

In a related statutory scheme, the Confidentiality of Medical Information Act (Civ. Code, §§ 56-56.35), which prescribes the conditions under which medical information may be disclosed to others by providers or employers, a "patient" is defined as "any natural person . . . who received health care services from a provider of health care and to whom medical information pertains." (Civ. Code, § 56.05, subd. (c).)

In a different statutory scheme regulating the disclosure of confidential communications between patients and physicians, the term "patient" is defined as a "person who consults a physician or submits to an examination by a physician for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his physical or mental or emotional condition." (Evid. Code, § 991.)

These statutory definitions and references are consistent with the usual and ordinary import of the term "patient." A "patient" is commonly defined as "a sick individual especially when awaiting or under the care and treatment of a physician or surgeon." (Webster's New Internat. Dict. (3d ed. 1966) p. 1655.)

The purpose of a pre-employment physical examination is not to provide either to the applicant or to the employer a diagnosis, treatment regimen, or prognosis of a physical condition. Rather, it is to provide to and for the sole benefit of the employer a determination whether the applicant is physically capable of performing a prescribed list of tasks, such as driving or lifting, which are related to a particular job.[6] We are apprised generally that as to each task, or as to the list of tasks as a whole, the determination is in the affirmative or in the negative.

In our view, the applicant for employment in such circumstances would not be the patient of the health care provider who is compensated by the employer to furnish the examination results to the latter. (See 63 Ops.Cal.Atty.Gen. 725, 732-733 (1980).) In *Keene v. Wiggins* (1977) 69 Cal.App.3d 308, 314-315, the court found no physician-patient relationship existed where a physician conducted an examination of an injured employee for the purpose of rating the injury for

---

[6]In *Coffee v. McDonnell-Douglas Corp., supra,* 8 Cal.3d at 559, the court noted:

"[W]e do not say that an employer, once having required a prospective employee to submit to a physical examination in order to ascertain his fitness for the job, assumes an absolute obligation to discover any diseased conditions. . . .[T]he purpose of the physical examination was to determine plaintiff's physical fitness as a pilot."

the employer's insurance carrier in a workers' compensation proceeding. Rather, the court determined that the physician's duty in reporting the results of the examination was directed only to the employer or the employer's carrier which had contracted for the services. (Id. at pp. 313-314.) Similarly, an applicant for employment is not the patient of or in a physician-patient relationship with a physician who is contracted by an employer to conduct on behalf of and for the benefit of the employer a pre-employment physical examination. (See *Felton v. Schaeffer* (1991) 229 Cal.App.3d 229, 234-237.)

We believe that in the factual situation presented, an applicant for employment would not be entitled to the disclosure of the physical examination results pursuant to the terms of section 1795.12, subdivision (a). We know of no other statute that would require disclosure here by the health care provider.

We thus conclude that a health care provider contracted to conduct a pre-employment physical examination upon an applicant for employment is not required, upon request, to disclose to the applicant the results of the examination.

* * * * *