Filed 11/24/14  Downing v. Flores CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KATHY DOWNING, | B249498 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC473336) |
| v. | |
| CARLOS FLORES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Affirmed.

The Yarnall Firm and Delores A. Yarnall for Plaintiff and Appellant.

Law Offices of Gregory J. Lucett, Shaghig Dadaian; Pollak, Vida & Fisher, Michael M. Pollak and Anna Birenbaum for Defendants and Respondents.

_____

Kathy Downing sued Carlos and Teresa Flores after their dog Sugar bit Downing, and Downing recovered $114,488.15 in compensatory damages after a four-day trial. Downing now appeals from the trial court's denial of her motion to amend her complaint, and from evidentiary rulings during trial. We affirm.

## BACKGROUND

Downing's initial complaint, filed November 10, 2011, alleged that Carlos and Teresa Flores owned Sugar, a dog "believed to be a pit bull/lab mix," with "an unusually dangerous or vicious nature" about which the Floreses knew or should have known. Downing was walking her dog Rambo and another dog (both properly leashed) on December 27, 2009, when Carlos was walking Sugar, who "was not under a proper form of restraint or control as would be required by any reasonable person." Without warning, Sugar attacked Downing and the dogs she was walking, biting Downing on her hand and body, and biting Rambo on his right front leg. As a result, Downing sustained multiple injuries including pain and suffering; Rambo sustained injuries; and "the other dog with plaintiff sustained injury as well." Downing had to seek medical treatment for herself and the dogs, and lost earnings and income. Downing stated causes of action for strict liability under Civil Code 3342[1] and negligence, demanded a jury trial, and sought general and special damages. The Floreses answered, denying liability and raising affirmative defenses.

Over a year after filing the initial complaint, Downing filed an ex parte application for leave to amend or to shorten time for a hearing on a motion to amend the complaint to add factual allegations that supported a claim for punitive damages against the Floreses. She attached a proposed amended complaint including additional allegations that on at least two prior occasions Sugar had escaped from the Floreses' control and attacked other people walking dogs, and Sugar was an "incorrigible dog fighter" who was hard to control. The Floreses knew about Sugar's propensities and the danger to others, and nevertheless acted "recklessly, in despicable conscious disregard for the high likelihood

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

2

of extreme harm and even death that could result from another attack by their dog, Sugar." The proposed amended complaint also alleged that after the attack on Downing the Floreses failed to take actions to restrain Sugar, lied about the attack after it occurred and about Sugar's breed, and prevented Sugar from being handled by animal control, leaving Downing in continued fear that caused her additional pain and suffering. The Floreses acted "despicably, with malice and oppression, and in reckless and conscious disregard" of the rights and safety of Downing and others, so that Downing sought punitive damages.

The Floreses filed an opposition on December 10, 2012, seeking to strike the additional allegations as not supported by concrete evidence and as failing to prove that the Floreses acted with "malice, fraud and/or oppression, and in reckless and conscious disregard" of Downing's safety, and therefore also to strike the request for punitive damages. Downing filed a reply in support of amendment and an opposition to the motion to strike the punitive damages claim on December 17, 2012, asking the court to grant her motion to amend and deny the Floreses' motion to strike, as "conscious disregard" could support an award of punitive damages ("because it would be judicially economical, the Court should go ahead and rule on the sufficiency of the First Amended Complaint").

The trial court heard the motions on December 19, 2012, and stated: "The problem is this is strict liability and negligence. They don't require intent. Neither cause[] of action requires intent. And malice requires specific intent. . . . [T]his is not an intentional act. And it doesn't rise to the level under [Civil Code section] 3294." Downing's counsel replied that intent was not required and conscious disregard sufficed. The trial court asked Downing's counsel: "Do you . . . have dog bite case where the court has allowed punitive damages?" Of the cases cited by Downing's counsel, "[n]one is a dog bite case. This is clearly an act of negligence. There's stri[ct] liability. . . . [I]t does not rise to the level of punitive damages."

The court adopted its tentative ruling, which stated that Downing had not pled malice with intent, but: "'[M]alice' may be present where defendant has engaged in

3

despicable conduct carried on with a willful and conscious disregard of the rights or safety of others. 'Oppression' also requires despicable conduct. Civil Code [section] 3294[, subdivision] (c)(2). While Plaintiff focuses on Defendants' prior knowledge of the dog's vicious propensities such that Defendants acted in conscious disregard of the high degree of probability of severe harm from another dog attack, Plaintiff fails to allege facts which constitute 'despicable conduct.'" The term "'despicable'" represented a new substantive limitation on the "willful and conscious disregard" standard of malice. As amended to include the term, the statute provided that in the absence of intent to injure, "'malice' requires more than a 'willful and conscious' disregard of the plaintiffs' interests. The additional component of 'despicable conduct' must be found." (Boldface omitted.) A failure to properly control Sugar "because the collar was too loose" despite knowledge that she had vicious propensities to attack others "does not rise to the level of 'despicable' conduct, which is a substantive limitation where a Plaintiff relies upon the willful and conscious disregard standard of malice." Noting that "the proposed punitive damage allegations would be subject to being stricken upon a motion by Defendants," the court denied Downing's motion for leave to file an amended complaint.

The Floreses admitted to liability under section 3342, which provides in subdivision (a): "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place . . . regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." They also admitted that Sugar was a substantial factor in causing harm to Downing. The trial court granted two defense motions in limine to exclude evidence and testimony regarding Sugar's alleged dangerous propensities, prior attacks on animals or humans, and allegations that Sugar was a pit bull mix; and evidence of post-incident emotional distress suffered by the other dog Downing was walking, who did not belong to Downing. The court also refused to allow Downing to call the Floreses as witnesses at trial to impeach their credibility, as the Floreses had admitted liability.

After a four-day trial on damages, the jury reached a verdict on February 20, 2013. The special verdict form given to the jury stated: "Defendants, Carlos Flores and Teresa

4

Flores, admit liability in this case for harm to the plaintiff. You have to determine the nature and extent of the harm to the plaintiff as a result of the incident." Under "What are Kathy Downing's damages?" the jury provided dollar amounts for past and future economic loss (including medical and other expenses and lost earnings) and past and future noneconomic loss (pain and suffering), awarding Downing a total of $114, 488.15, including a total of $75,000 in general damages ($50,000 past and $25,000 future). The trial court entered judgment on April 3, 2013, notice of entry of judgment was served on April 23, 2013, and Downing filed this timely appeal.

## DISCUSSION

Downing argues that the trial court erred in denying her motion to amend the complaint to add a claim for punitive damages. We review de novo the trial court's denial of the motion to amend, which the trial court made on the basis that Downing did not demonstrate sufficient evidence to establish a prima facie case for punitive damages and without making credibility determinations, weighing the evidence, or drawing inferences from the facts. (*Aquino v. Superior Court* (1993) 21 Cal.App.4th 847, 850.)

Punitive damages have been authorized by statute since 1872 in tort actions "where the tortious event involves an additional egregious component—'oppression, fraud, or malice.' (Civ. Code, § 3294, subd. (a).)" (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 712 (*College Hospital*).) "[T]he Legislature has made it more difficult for plaintiffs to plead and prove such claims," (*id*. at p. 712) including by amending section 3294 in 1987 "by increasing the plaintiff's burden of proving punitive damages at trial to 'clear and convincing evidence.' The definition of 'malice' was also refined. For plaintiffs attempting to prove malice by showing a 'conscious disregard' of their rights as opposed to an actual intent to harm, the Act imposed additional requirements of 'despicable' and 'willful' defense conduct." (*Id.* at p. 713.) The prior section 3294, subdivision (c)(1) defined "malice" as "'conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others.'" (*Weisman v. Blue Shield of California* (1984) 163 Cal.App.3d 61, 65, fn. 3 (*Weisman*).) Today, after the 1987

5

amendments, subdivision (c)(1) defines malice as "conduct which is intended by the defendant to cause injury to the plaintiff or *despicable* conduct which is carried on by the defendant with a *willful and* conscious disregard of the rights or safety of others." (Italics added.) The addition of "willful" "arguably conformed the literal words of the statute to existing case law formulations" that "malice involves awareness of dangerous consequences and a willful and deliberate failure to avoid them." (*College Hospital*, *supra*, 8 Cal.4th at p. 725.) "However, the statute's reference to 'despicable' conduct seems to represent a new substantive limitation on punitive damage awards. Used in its ordinary sense, the adjective 'despicable' is a powerful term that refers to circumstances that are 'base, vile, or contemptible.' [Citation.] As amended to include this word, the statute plainly indicates that absent an intent to injure the plaintiff, 'malice' requires more than a 'willful and conscious' disregard of the plaintiffs' interests. The additional component of 'despicable conduct' must be found." (*Ibid.*)

The additional allegations in the proposed amended complaint were that there were prior incidents when Sugar had escaped from the Floreses' control and attacked other dogwalkers, that Sugar was a "dog fighter," and that the Floreses knew about the incidents. The supporting evidence Downing offered included Carlos's[2] testimony at his deposition that he knew of a prior incident when Sugar jumped over the wall around his yard, and a woman fell and scraped her lip when the dog she was walking ran to escape Sugar. Carlos raised the wall around the yard. A note on a veterinary bill from 2008 stated that Sugar was examined for wounds from a "dog fight 2 days ago." A neighbor who witnessed the Downing incident (and who testified at trial) testified at a deposition that less than a year before Sugar bit Downey at the end of 2009, he saw Sugar run up to a woman walking a smaller dog, pick up the dog in his teeth, and shake it; he kicked Sugar, who let go of the smaller dog and ran home. Carlos came out of the house and said he was sorry, and that although they had built up the wall, Sugar escaped from the yard sometimes. In a declaration, Downing's attorney stated that she was informed and

---

[2] For clarity we use Carlos's first name. No disrespect is intended.

believed that neighbors were afraid that Sugar would escape and bite them. There was no evidence that Sugar had ever bitten another person.

We agree with the trial court that "no vile or 'despicable' conduct appears from the face of the proposed complaint or the evidence before us." (*College Hospital*, *supra*, 8 Cal.4th at p. 726.) Downing cites *Weisman*, *supra*, 163 Cal.App.3d 61, to support her argument that the Floreses consciously disregarded the risks presented by Sugar, but *Weisman* was decided in 1984, before the 1987 addition of "despicable conduct" to section 3294, subdivision (c)(1), as was *Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, which she also cites. "'Despicable conduct' is defined [in jury instruction] as 'conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.' Such conduct has been described as '[having] the character of outrage frequently associated with crime.'" (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287.) The court of appeal reversed an award of punitive damages where there was no evidence of conduct "which could be described as evil, criminal, recklessly indifferent to the rights of the insured, or with a vexatious intention to injure." (*Id.* at p. 1288.) The addition of "despicable conduct" to section 3294 was an "important change" making the burden to prove punitive damages "substantially heavier," so that a punitive damages instruction failing to include the "more exacting standard for malice" was error, compounded when another instruction was based on authorities before the 1987 amendment and misstated their import. (*Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 331, 332, 336.) Other cases involving unintentional torts have found punitive damages unavailable as a matter of law where the defendant's conduct was in bad faith and overzealous but not despicable. (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1212.)

Cases meeting the more exacting "despicable" standard have involved evidence of egregious behavior. An order granting a motion to strike a punitive damage claim was reversed, when a tort complaint for unlawful seduction/sexual abuse alleged that a 48-year-old medical doctor intentionally violated numerous criminal statutes when he

7

engaged in sexual intercourse and orally copulated a minor female, provided her with drugs and alcohol, and paid her to procure illegal substances for him, knowing her dysfunctional family background made her particularly vulnerable. (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1221–1222, 1228.) The court of appeal concluded that a jury could find such behavior to be vile, base or contemptible. (*Id.* at p. 1229.) Punitive damages for "despicable conduct" were appropriate in a tort suit by a cancer victim against a boiler manufacturer that "fully understood that asbestos dust endangered workers, but it did not issue warnings to customers" until much later, "notwithstanding its awareness that they used the products in ways that generated considerable asbestos dust." (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1280, 1300–1301.)

Downing complains that the trial court asked whether punitive damages had been awarded in any dog bite case, claiming that this is irrelevant. We disagree. The complaint alleged strict liability under section 3342 and negligence, and punitive damages are "typically awarded for intentional torts" while "cases involving unintentional torts are far fewer." (*Lackner v. North*, *supra*, 135 Cal.App.4th at p. 1212.) We have found no case involving a dog bite where the court found the defendant's actions despicable for the purpose of awarding punitive damages; such a case would have provided a basis for comparison. (See *id.* at pp. 1212–1213.)

We also conclude the trial court did not abuse its discretion in granting the defense motions in limine and in declining to allow Downing to call the Floreses to impeach their credibility. The trial court had discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will necessitate the undue consumption of time, or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury," and the party challenging the trial court's ruling has the burden on appeal of establishing an abuse of discretion. (*Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 727.) Even if evidence is improperly excluded, reversal is not justified unless absent the error it is reasonably probable the jury would have reached a result more favorable to the appellant. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432.) The only issue before

the jury at trial, given that the Floreses admitted liability and the trial court had denied the motion to amend to add a punitive damages claim, was the amount of compensatory damages due to Downing. We do not think evidence of Sugar's breed and propensities was relevant to how much Downing should be compensated for the harm caused by the dog bite. Although she argued that the postincident neurotic behavior of the other dog she was walking (which was not her dog) made her anxious and upset, causing emotional damages, there was ample other evidence at trial of Downing's injuries and her fear and pain and suffering, and the jury awarded Downing $50,000 in past general damages. Further, calling the Floreses to testify when they had admitted liability had minimal probative value regarding compensatory damages. Any minimal relevance of the additional evidence that Downing sought to admit was outweighed by the danger of prejudice to the Floreses, as it risked confusing the issues and misleading the jury. (Evid. Code, § 352.) Downing has not met her burden to establish that the trial court abused its discretion, and even if there had been error, we see no miscarriage of justice.

## DISPOSITION

The judgment is affirmed. Costs are awarded to the respondents.

NOT TO BE PUBLISHED.


                                              JOHNSON, J.


We concur:


        ROTHSCHILD, P. J.


        CHANEY, J.

9